**BAUMAN, Plaintiff-Appellant, v. GUCKENBERGER, ET, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6758. Decided February 17, 1947.

Fred C. Lamping, Cincinnati, for Plaintiff-Appellant.

Carl W. Rich, Cincinnati, Prosecuting Attorney, and James Headley, Assistant Prosecuting Attorney, Cincinnati, for Defendants-Appellees.

## OPINION

By ROSS, J.:

This is an appeal upon questions of law from a judgment of the Common Pleas Court of Hamilton County.

The action was commenced October 7th, 1946, and was instituted to obtain a declaratory judgment upon the status of certain real estate, sold by the Auditor of Hamiltton County as forfeited land.

In the petition, it is alleged that the plaintiff purchased a certain parcel of land at a "tax sale" conducted by the Auditor of Hamilton County, at the County Court House, that one Edna Luella Ewald failed to pay the taxes upon such parcel of land for a period in excess of three years, that "after all statutory proceedings were had" such parcel of land was forfeited to the State of Ohio by decree of the Court of Common Pleas of Hamilton County, Ohio, and that on the following day, to-wit: June 1, 1946, the Auditor published in the newspapers of Cincinnati, Ohio, his first notice of sale of such forfeited lands, and on June 8th, 1946, his second notice was published, and June 10th, 1946, such Auditor began the sale of such forfeited land, that plaintiff paid $400.00 as the purchase price of said parcel and was issued a certificate of purchase by the Auditor, that, thereafter, plaintiff sought advice of counsel, and became convinced that the Auditor had not complied with the statutes applicable to the sale of forfeited lands and particularly §5751, GC; that the Auditor is tendering plaintiff a deed to such property so purchased by him, and that such deed, by reason of the failure to comply with the statutes, will be insufficient to convey good title to plaintiff. The prayer of the

petition is for a judgment of the Court, declaring the rights of the plaintiff in the premises, and in particular whether the Auditor, under the circumstances can convey a good title, and for all further and necessary relief.

In effect, the answer of the Auditor is an admission of the factual allegations of the petition and an assertion that the provisions of §5751, GC, are "directory" and not "mandatory." The Auditor joins in the prayer of the petition for a declaration of rights in the premises, and that the "sale and all steps taken" were in conformity with the statutes, and that the deed tendered will convey a "new and perfect title."

The trial court found that the Auditor had complied with the statutory requirements, and that he could convey good title by the deed tendered.

From the evidence it appears that the Auditor at the sale mentioned in the pleadings sold 3,759 parcels of land out of 4,394 parcels covered by a judgment of forfeiture previously made in the Court of Common Pleas of Hamilton County; some 630 to 640 parcels having been redeemed. The total returns from such sales amounted to $243,649.48, and the cost of advertising and other expense amounted to $41,236.06, and that such sales were conducted after conference with the Prosecuting Attorney of Hamilton County, and in conformity with the opinion of the Attorney General (June 19, 1944, O. A. G. 1944, p. 342, No. 6988).

In addition to the foregoing, a stipulation of fact was entered into by the parties, filed in the Court, and made part of a bill of exceptions.

In its final judgment, the Court fails to state how evidence was presented to it.

This action having been commenced subsequent to October 11th, 1945, the new and amended provisions of the Code of Civil Procedure, effective on that date, became applicable.

A motion for new trial was filed to an entry of the court marked "Finding." Although so marked, it is essentially a final judgment. Thereafter, the Court entered an "Order overruling the motion for New Trial and rendered judgment in favor of the defendant George Guckenberger, Auditor." There is no authority for such practice as to actions commenced after October 11th, 1945. The so-called "Finding" is in fact a final judgment; and the second "Judgment" may be disregarded except as an overruling of the motion for new trial. The notice of appeal was filed within 20 days from such overruling of motion for new trial.

The stipulation contains the following statement of facts:

"After the August, 1943, settlement, taxes having remained

unpaid on the land described in the plaintiff's petition for more than two consecutive semi-annual tax settlement periods, the defendant, George Guckenberger, Auditor of Hamilton County, Ohio, included said land in a list of all delinquent lands located in the county. This list was duly certified by said defendant on the 11th day of February, 1944. On February 2 and 9, 1944, display notices of the coming publication of the delinquent land list were inserted in two newspapers, The Cincinnati Times-Star and The Cincinnati Enquirer. On March 15 and April 10 of 1944, a list of the delinquent lands was published in The Cincinnati Times-Star. On March 16 and April 10, 1944, the same list was published in The Cincinnati Enquirer. More than two years after the publication of such certification, the defendant Auditor made a certificate of all delinquent lands, certified as aforesaid, upon which taxes had not been paid. On April 11, 1946, the Auditor submitted this list to the County Board of Revision. After consideration of this list, the Board ordered certain lands to be omitted from foreclosure. On May 14, 1946, a list of these omitted lands having been prepared, this list including the property described in the plaintiff's petition, the Prosecuting Attorney, in the name of the members of the Board of Revision, filed an application in the Common Pleas Court of Hamilton County, Ohio, case No. A-98583, to have these lands forfeited to the State (of) Ohio.

"On May 31, 1946, the Court granted the application of the Board of Revision and declared the lands included in the list prepared by the Board of Revision, with some few exceptions, forfeited to the State of Ohio. The land described in the plaintiff's petition was included in these lands so forfeited. On June 1, 1946, the Auditor published in The Cincinnati Times-Star and The Cincinnati Enquirer a notice that the following is a list of the lands forfeited to the State for non-payment of taxes and the dates on which said lands will be offered for sale. This publication also gave notice that if taxes are not paid before the date of sale of any parcel the listed lands will be offered for sale to satisfy such taxes. On June 3, 1946, this publication was again made in The Cincinnati Times-Star and The Cincinnati Enquirer.

"On June 12, 1946, the property described in the plaintiff's petition having been included in the list of forfeited lands to be sold on said date was offered for sale, the taxes thereon having not been paid. This land was first offered for the amount of taxes, assessments, penalties, interest and costs. No offer being received, it was offered to the highest bidder. Whereupon, the plaintiff bid Four Hundred ($400.00) Dollars.

This being the highest bid, the Auditor issued a certificate of such sale to the plaintiff, upon receipt of the sum of Four Hundred and One and 35/100 ($401.35) Dollars, paid to him by the plaintiff. The Auditor is now offering to deliver a deed conveying said property to the plaintiff.

"It is hereby stipulated that the foregoing is a true and correct statement of the facts concerned in this case."

From this it appears that the Auditor followed the statutory requirements up to and including the decree of forfeiture of the Common Pleas Court, May 31, 1946, but, thereafter, failed to comply with the provisions of §5750, GC, as to any of the forfeited land, including the particular parcel herein involved. Had he so complied with the law, he would have waited until the following November and then made a list of all forfeited lands.

Sec. 5750, GC, provides:

"The several county auditors, annually between the first Monday of November and the first day of January, shall make a list of all forfeited lands and lots in the county and shall sell the forfeited lands and lots agreeably to the provisions of this chapter. Lands and lots so forfeited, which, for any cause have not been so offered, shall be offered for sale under the provisions of this chapter, and if not sold for want of bidders, shall be again advertised and offered for sale by the county auditor, at the next subsequent sales by him made, under this chapter, until such lands and lots are sold."

Also, had he so complied with the provisions of §5750, GC, the provisions of §5751, GC, would have them become applicable and appropriate. This section provides:

"If the taxes, assessments, penalties, interest and costs due on the forfeited lands have not been paid on or before the fifteenth day of January of each year, the county auditor shall cause notice thereof to be advertised once a week for two consecutive weeks prior to the first day of July in each year, in two newspapers as provided in §5704 GC. Such notice shall state that if the taxes, assessments, penalties, interest and costs charged against the lands forfeited to the state for non-payment of taxes are not paid into the county treasury and the treasurer's receipt produced therefore before the time specified in said notice for the sale of said lands, which day shall be

named therein, each 'tract, so forfeited, on which the taxes, assessments, penalties, interest and costs remain unpaid will be offered for sale beginning on a date to be set by the county auditor, which date shall not be later than July first of each year, at the court house in such county, in order to satisfy such taxes, assessments, penalties, interest and costs, and that such sale will continue from day to day until each of such tracts is sold or offered for sale."

Having made his list between November and January, those parcels, the taxes for which had been paid on or before the following January 15th, would be eliminated and the notice and sale provided for thereafter would have followed in an orderly manner. It was because the Auditor failed to wait until the following November and then comply with the provisions of §5750, GC, that the time schedule provided by the legislature was thrown out of gear, and the provisions of §5751, GC, became entirely unintelligible when applied to the actual procedure adopted by the Auditor in this case.

In passing, it is to be noted that the provisions of §5746, GC, in no way conflict with the time schedule adopted by the legislature. This section provides:

"If the former owner of a tract of land or town lot, which has been so forfeited, at any time before the state has disposed of such land, or lot, shall pay into the treasury of the county in which such land or lot is situated, all the taxes, assessments, penalties and interest due thereon at the time of such payment, the state shall relinquish to such former owner or owners, all claim to such land or lot. The county auditor shall then re-enter such land or lot on his tax list, with the name of the proper owner."

This simply gives the right to an owner anytime before sale to redeem. Sec. 5751, GC, provides the limit beyond which the Auditor is not required to delay the proceedings incident to sale of forfeited lands.

It appears, as stated before, that the Auditor relied upon the opinion of the Attorney General (1944 O. A. G. No. 6988, p. 342).

This opinion has been carefully considered. It seems, however, that the net effect of same is to select one period of the time schedule as being merely "directory," while others are considered "mandatory."

A reading of all the sections of the Chapter on forfeited lands (Secs. 5744, et seq., GC) develops a systematic and rea-

sonable program for the ultimate sale of forfeited lands and the disposition of the proceeds of such sale.

No valid reason appears why any factor in such time schedule should be ignored. The consequences in doing so are apparent in the instant case.

It is not the function of a court to question the wisdom of the legislature in enacting valid laws. Courts can not write what they may consider better acts, nor can they ignore specific legislative provisions in order that disastrous results following acts of officers of the state, contrary to such provisions, may not result.

The hardship and inconvenience ensuing because the sales, including that involved here, are declared void, are not overlooked. It is to be deeply regretted. Such sales, however, were predicated upon procedure not only not authorized by law, but in direct conflict with specific provisions clearly outlining a course of conduct entirely reasonable and ensuring full justice to all concerned.

No reason appears in the record justifying the unwarranted precipitancy involved. The statutes clearly indicate that in the instant case the Auditor should have waited until the November following May 31, 1946, then made up his list of "forfeited lands" waited for those who might pay until January 15th, 1947, and then proceeded with his notice and sale.

It will be noticed that in §5751, GC, the words "on or before the fifteenth of January of **each year**" (emphasis added) are used. It will also be noted that §5750, GC, provides that forfeited lands offered for sale and not sold, shall be carried along from year to year and offered until sold. It, therefore, appears that the 15th of January is the clearing date for all forfeited lands listed in the previous November–January period. It is on this date **"each year"** the Auditor is authorized to determine what forfeited lands are to be sold. In the November–January period he has made up his list of forfeited lands previously offered and not sold, and those forfeited prior to November in the current year, and on January 15th is to eliminate those redeemed.

What is difficult or unreasonable in requiring conformity to such time schedule? No sound reason appears for ignoring any part of it. The legislature is presumed to have had a valid reason for **all** the requirements which ultimately result in taking the property of one man and selling it to another.

One of the rights involved in the request for a declaration is that of the plaintiff to recover the price paid the auditor for the parcel of land.

It seems that in such payment there could be no mistake of fact. The plaintiff must be presumed to have known that

the forfeiture of the land involved was decreed by the Court May 31, 1946. The land was offered for sale June 12, 1946. Hence, it must have been apparent that there had been no compliance with the provisions of §§5750-5751, GC, and the legality of such failure of compliance must have therefore raised a question of law and not of fact.

It is a rule of long standing that money paid under a mistake of law cannot be recovered. **31 O. Jur. p. 233; 40 Am. Jur., p. 856, et seq.; Phillips, Exr. v McConica, etc., 59 Oh St 1; Railway Co. v Iron Co., 46 Oh St 44; Moore, Admx. v Farmers State & Savings Bank, 47 Oh Ap 10.**

The application of this general rule to the instant predicament of the plaintiff presents a situation shocking to all sense of justice.

The basis for the rule is stated in **Railway Co. v Iron Co., 46 Oh St 44,** supra, at **p. 51** of the opinion:

"The principle which denies a recovery in this class of cases will be found to rest upon considerations of general convenience, to which corporations as well as natural persons are required to conform. Remedial justice is established to aid those who cannot aid themselves without the use of violence, in obtaining what as a matter of right is their due. It does not invite litigation, and declines its assistance to those who voluntarily place themselves in the situation of becoming suitors. The Iron Company was at liberty by its agents to accede to the demand of the railroad company for the delivery of the goods on the subscription, or to decline to do so. It chose with a full knowledge of the facts, to deliver the goods; and there is no sound reason why it should be aided in a lawsuit made necessary by its own voluntary act, that would not apply with equal force to a natural person. Where there is no ignorance of the facts, or coercion, it is said, in Glass Co. v City of Boston, 4 Met. 181: 'If the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other upon equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. If it were not so, the effect would be to leave the party who pays the money, the privilege of selecting his own time and convenience for litigation; delaying it, as the case may be, until the evidence, which the other party would have relied upon to sustain his claim, may be lost by lapse of time and the various casualties to which human affairs are exposed.' In some cases stress is laid upon the inconvenience it would be to the other party, who may receive the money as his own, and, acting upon that belief, so dispose of it as to

make it exceedingly inconvenient, if not impossible, to repay it. Brisbane v Dacres, 5 Taunt. 144, Gibbs J. 152; Clarke v Dutcher, 9 Cowan, 674, 684."

And, it is stated in 40 Am. Jur., 857:

"The rule that money paid under a mistake of law cannot be recovered as between individuals, although sometimes unjust in its operation, is based on expediency and public convenience, because it would render the administration of justice almost impracticable if parties litigant should be permitted to set up as matters of relief or defense that they were ignorant of the law by which their transactions, dealings, and contracts were governed. It has often been said by judges and text writers that everyone is presumed to know the law, but it is quite obvious that this phrase is not to be taken in its literal significance, and that it means no more than is expressed by the maxim 'ignorantia legis neminem excusat.' Various other principles have been invoked in the application of the rule, but the best that may be said of it even as applied to individuals is that it is a handy rule to apply in those rare cases where the application of it prevents gross injustice."

The result here presented is that the State still owns the land forfeited to it and has possession of the plaintiff's money, paid in good faith upon the presumption that a public officer, representing the State in the sale of its land, was doing so in full compliance with all legal requirements. The officer, relying upon the prosecuting attorney and the opinion of the Attorney General, performed a void act, the result of which was to deprive the plaintiff of his money, without giving him anything in return therefor.

It is true the plaintiff voluntarily paid the purchase price, that he is presumed to know the law, and that the opinions upon which the Auditor relied were based upon erroneous assumptions involving the effect of the statutes involved, that no fraud was practiced upon plaintiff, and that there could be no mistake of fact. On the other hand, the plaintiff is in no way responsible for any loss which the State may suffer in connection with these void sales, and any "inconvenience" that may follow is due to the erroneous assumptions of the officers of the State. Certainly, it cannot be supposed that any equitable or even legal principle would justify the refusal of the agents of the State to return to plaintiff the purchase price paid under such circumstances.

Therefore, although it must be determined that the sale

of the forfeited land to plaintiff by the Auditor was ineffective to transfer the title of the State therein to Plaintiff, it is also determined that the plaintiff upon prompt demand being made upon the Auditor is entitled to the return of the purchase price paid by plaintiff, but without any interest for the retention of such purchase price.

ROSS and HILDEBRANDT, JJ, concur in Syllabus, Opinion and Judgment.

MATTHEWS, PJ, concurring in separate memorandum.

By MATTHEWS, PJ, (concurring):

I concur in the conclusion.

As to the right of the plaintiff to recover the amount which he paid to the Auditor, it seems to me it is sufficient to say that the money was paid to obtain a title, evidenced by a deed which has not been delivered, and which the Auditor cannot legally execute or deliver. Therefore, there has been a total failure of consideration. That is sufficient basis for recovery.