**DELMOND, Plaintiff-Appellee, v BOARD OF INVESTORS CORPORATION, ET AL., Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20677.   Decided May 7th, 1947.

294

E. A. Plazer, Cleveland, for plaintiff-appellee.

R. A. Baskin, Cleveland, Frank T. Cullitan, County Prosecutor, Cleveland, F. W. Frey, Cleveland, for defendants-appellants.

**OPINION**

By HURD, PJ.:

This is an appeal on questions of law and fact by the defendant-appellant, The City of South Euclid, from a judgment of the Court of Common Pleas of Cuyahoga County dismissing the answer and cross-petition of said defendant-appellant, and quieting title of the plaintiff against all claims of the defendants including the special assessment liens of said City.

The action was commenced July 25, 1946 and was instituted by the plaintiff to quiet title as to any and all claims of the defendants upon certain real estate purchased by the plaintiff

from the Auditor of Cuyahoga County at a forfeited land sale.

By an amended petition the defendant, City of South Euclid was made a new party defendant and by its answer which is also in the nature of a cross-petition, asserted the lien of special assessments on said property, claiming said sale to be void.

The defendant, The Board of Investors Company, the former property owner whose lands were sold at the forfeited land sale was in default of answer and appearances and at no time in these proceedings has made any claim in respect of any interest in the forfeited lands.

The primary question to be decided is whether or not the said sale conducted by the County Auditor was valid.

The Common Pleas Court upon hearing found in substance by journal entry filed January 20, 1947, that all the proceedings resulting in the forfeiture of said land to the State of Ohio on June 13, 1945, were in all respects in compliance with the statutes and particularly in compliance with the provisions of §§5705, 5718, 5718-1, 5718-1(a), 5718-1(b), 5718-1(c), 5718-4 GC, and found further that the provisions of the General Code relating to the sale of forfeited lands are directory and not mandatory and that all of the provisions of the General Code relating to the sale of forfeited lands had been substantially complied with by the Auditor, whereby the plaintiff had become vested of a good and indefeasible title in fee simple in and to the lands described and that the defendant, The Board of Investors Company and the defendant, City of South Euclid, by virtue of said forfeiture sale aforesaid had become divested of any interest in said lands and that the defendant, City of South Euclid, has no valid claim against the land for past due taxes and assessments or for future assessments, reassessed against said lands on January 16, 1940 and that the assessments for street lighting are still a valid claim charged against said lots from and after July 27, 1945.

During the course of the argument it was stated in open court by counsel that at the sale described in the pleadings the Auditor sold 3050 parcels of land covered by judgment of forfeiture previously made in the Common Pleas Court in Cuyahoga County. The total returns from said sales amounted to $1,391,490.00 and costs of advertising and other expenses amounted to $9148.00. The record does not show the number of years of delinquency, except that all parties had agreed that the delinquencies had existed for many years.

The case was tried in this court upon stipulations of fact of which the following are particularly pertinent:

"4. That the defendant, the City of South Euclid, prior to the year 1940, levied against the property described in the petition special assessments to finance the cost of street, sewer district and other improvements, and bonds were issued in anticipation of the collection of said assessments; that said special assessments were made payable in annual installments and were certified to the County Auditor for collection on the tax duplicate as other taxes are collected; that certain installments of said assessments were not paid; that on January 16, 1940, under and pursuant to §§2293-5(p) to 2293-5(u) GC, inclusive, the City of South Euclid reassessed the unpaid portion of all the special assessments theretofore levied by it against the property described in the petition; that said reassessments were made payable in twenty-eight annual installments and were certified to the County Auditor for collection on the tax duplicate as other taxes are collected, beginning with the year, 1939 tax duplicate."

"5. That the property described in the petition which comprises various sublots, became delinquent because of the non-payment of taxes, assessments and reassessments which had been levied against it, and was forfeited to the State of Ohio on June 13, 1945 after proceedings were had by the Common Pleas Court under §§5705, 5718-1, 5718-1(a), 5718-1(b), and 5718-1(c), 5718-4 GC, and also after said property had been omitted from foreclosure proceedings by the County Board of Revision."

"6. That after the forfeiture of the property described in the petition on June 13, 1945, the County Auditor caused to be published in English in "The South Euclid Citizen" and the "Berea News" two newspapers of general circulation in the county, on the 15th and 22nd days of June, 1945, a notice that said described property and other forfeited lands would be sold at public auction if the due and unpaid taxes, assessments, penalties, interest and costs charged against said forfeited property were not paid before the date fixed in said notice for the tax sale of said forfeited property; that a copy of said notice of sale is hereto attached, marked "Exhibit A" and made a part hereof;"

"7. That the taxes, assessments, penalties, interests and costs charged against the property described in the petition not having been paid, the said described property was offered for sale to the public at public auction by the County Auditor, pursuant to the aforesaid tax sale notice * * * and was sold to the plaintiff on the 27th day of July, 1945, by the County Auditor; that the plaintiff paid to the County Auditor the

full amount of his bid, in cash, plus $1.25 for each parcel purchased and received from said county auditor the required statutory certificates for each parcel so purchased; that deeds for the sublots comprising the said described property were subsequently issued and delivered to the plaintiff by the county auditor; and that said deeds were recorded on September 6, 1945 in the Deed Records of Cuyahoga County, Ohio;"

"8. That the County Auditor did not between the first Monday of November, 1945 and the first day of January, 1946, for the purpose of public sale, make any list of the forfeited lands and lots in the county which included the forfeited property described in the petition, nor did he make any list whatsoever of the forfeited lots and lands of the county between said dates for the purpose of public sale;"

"9. That the county auditor, having sold the property described in the petition at the tax sale as aforesaid, did not subsequent to January 15, 1946, cause notice of the tax sale of said property to be advertised once a week for two consecutive weeks prior to the first day of July, 1946, in two newspapers as provided in §5704 GC, nor did he sell the said described property to the plaintiff or other persons subsequent to January 15, 1946."

The parties are in accord on the proposition that the forfeiture of the lands described in plaintiff's petition was, in all respects, valid by reason of proper proceedings in common pleas court, all parties agreeing that there was strict compliance with all statutes relating to forfeiture.

The questions before the court arise under §§5750, 5751, 5752 GC and relate solely to whether or not the advertisement and sale of the lands followed the procedure outlined in these respective sections. If it be held that the statutory procedure was not followed then a further question arises as to whether the provisions of these three sections are mandatory and gives rise to a jurisdictional question of whether or not they are merely directory.

Another question is presented by reason of the provisions of §5762-1 GC which in substance provides that in all cases wherein real property has been sold under and by virtue of the provisions of Chapter 14 or 15 (Sec. 5704 to 5773 GC) no action shall be commenced nor shall any defense be set up for any irregularity, informality or omission in the proceedings relative to foreclosure or forfeiture unless such action be commenced or set up within one year after the deed is filed for record. This issue was raised because in the instant case the answer

and cross-petition of the City of South Euclid was filed more than one year after the filing of plaintiff's deeds for record.

The City of South Euclid defends against plaintiff's suit to quiet title against certain special assessments levied by the City, on the ground that the Auditor's sale of this forfeited land was void and therefore the liens of such special assessments were unaffected by such attempted sale.

The City of South Euclid contends that the sale was void for the reason that it was held before the time provided by law. It is claimed that the statute intends and provides that a 15th day of January must intervene between the time of the forfeiture of such land and the sale thereof. It is urged that the law intends that the owner shall have the intervening period between forfeiture and the next 15th day of January in which to redeem his land and that this sale invaded that right. Specifically, it is maintained that land having been foreifted in June, 1945, no sale thereof could be made until prior to July 1, 1946, after due advertisement made subsequent to January 15, 1946.

It is the contention of the county prosecutor representing the county officers who are defendants, that the provisions of §5751 GC do not concern the owner's right of redemption and that it was not intended by the legislature to have the effect of extending in point of time his right to redeem, but that because of the changed procedure by the Act of 1943 amending the applicable sections, the legislature provided for an annual sale to be held between January 15, and July 1st of each year of any forfeited lands, whether they be such as appear on the Auditor's list thereof prepared in accordance with §5750 GC, or whether they be such as were judicially forfeited after the preparation of such list.

It is also the contention of plaintiffs that the statutes in question, after forfeiture, are directory only, particularly as to time and that in any event the action of the City of South Euclid is barred by the statute of limitations of one year provided in §5762-1 GC.

It is a matter of common knowledge that the situation with respect to tax sales made after forfeiture of the land to the state has been causing great concern. However, generally speaking, tax sales have been upheld by the courts.

The holdings of the supreme court of Ohio, down through the years, have been generally to the effect that an auditor's deed, either under delinquent tax sales procedure, or under forfeited land sales procedure, ipso facto and by administrative process within the power of taxing authorities operated

upon the land only and not by way of sale of the interests of the claimants, cutting off all possible interest and claims to the land sold, and originating a new and independent title, valid in the receiver of the deed against all possible claims to or in the land. See **Gwynne v Niswanger, 20 Oh St 556; Jones v Devore, 8 Oh' St 430; State ex rel v Godfrey 62 Oh St 181; Kahle v Niseley, 74 Oh St 328; Cech v Schultz, 132 Oh St 353, 8 OO 113.** The Supreme Court of the United States has adopted the same logic and conclusions in the case of Heffner v Northwestern Mutual Life Ins. Co., 123 U. S. 747. See also; **State ex rel City of S. Euclid v Zangerle, 145 Oh St 433** decided June 25, 1945; **Dubin appellant v Greenwood et al, Hart Supt. etc., 139 Oh St 547;** approving **Kahle v Niseley, 74 Oh St 328** and **Cech v Schultz, 132 Oh St 353; People's Savings & Loan Co. v Bingham Land Co. et al, 20 OO 511;** 6 O. Supp. (C. P.) 114. See also "The Title Problems of Tax Sales" by John Smith of the Cleveland Bar, **19 OO 537.**

After a careful examination of the sections of the statutes applicable in this case we are of the opinion that the difficulties of construction and interpretation arise by reason of a failure to consider the history of the statutes and particularly the fact that the procedure for the forfeiture and sale of delinquent lands was amended August 11, 1943, in such a manner as to take from the county auditor the responsibility of declaring forfeited lands. After the enactment of the Act of 1943, the proceedings of the sale of delinquent lands remain the same up to and including that portion of the provision which requires the Board of Revision to prepare a list of lands to be omitted from foreclosure. From that point on, the proceedings were entirely changed. Instead of providing that forfeiture should occur upon publication by the auditor, it is provided that upon preparation of such list of lands to be omitted from foreclosure the prosecuting attorney shall file an application on behalf of the Board of Revision with the Common Pleas Court for the forfeiture of such lands setting forth in such application a statement of all the previous procedure with reference thereto. (See §5718 GC.)

The court is then required to fix a date for the hearing of objections to the action of the Board of Revision, including lands in such omitted list and is required to order its clerk to give notice by publication of the time and place of hearing of such objections, which notice is to include a list of such omitted lands and the names of owners thereof, as appearing on the auditor's duplicate together with the amount of taxes, etc. (See §5718-1(b) GC). A hearing is then had at such time

and objections to the inclusion of such lands in the forfeiture proceedings are required to be heard and upon the court making a finding that the proceedings were regular it confirms the action of the Board of Revision and declares such lands forfeited to the State of Ohio.

It is provided further that witnesses may be called, testimony introduced, a hearing had and adjourned from day to day and that any person against whom a decision is rendered shall have the same right of appeal as in other civil actions. (See §5718-1(c) GC.)

The changed proceedings provide that upon the court ordering such lands forfeited to the state, a list of such lands "shall be certified by the Clerk of Courts to the County Auditor." See §5718-1(c) GC. Thus the County Auditor would have in his hands the means of carrying out the remaining statutory provisions requiring him to advertise and sell such lands.

It should also be noted that the old section of the Code provided a rigid schedule fixing the time for the doing of each step in the course of forfeiture and sale. Because the County Auditor, under the old section, an administrative officer, was then clothed with the power of declaring lands forfeited for non-payment of taxes and assessments, it was essential that such rigid schedule fixing the time of doing each step be adhered to in all respects. It should also be noted that old §5750 GC provided a different procedure than the existing §5750 GC.

New §5750 GC omits entirely the provisions that the Auditor of State "annually shall enter into the book provided for in the next preceding section, all lands forfeited to the state for non-payment of taxes" and also omits the provision "that the several county auditors annually between the first Monday of November and the first day of January shall make a list of all forfeited lands and forward it to the auditor of state, who, after comparing it with the record of forfeited lands in his office, and correcting any errors or omissions thereon, shall return it to the several county auditors." It merely provides in substance that the several county auditors "annually between the first Monday of November and the first day of January, shall make a list of all forfeited lands and lots in the county * * * ."

It is only necessary to compare old §5751 GC with new §5751 GC and the intention of the legislature becomes clear. The old §5751 GC in describing the duties of the county auditor relative to the publication and sale of forfeited lands, states:

"The auditor of each county on receiving from the auditor of state such list of lands within his county, if the taxes, assessments, penalties and interest due thereon **have not been paid on or before the fifteenth day of January next ensuing shall cause notice thereof** to be advertised once a week for two consecutive weeks prior to the second Monday of March in two newspapers in the English language of opposite politics and of general circulation printed in his county. Such notice shall state * * *."

It will be noted that according to the provisions of new §5751 GC this advertising is **not required** to occur after the 15th day of January **"next ensuing"** that is to say, the 15th of January of the year following the forfeiture. It could occur in the period fixed by the statute in any year. It is quite possible that the forfeiture proceedings begun in the common pleas court followed by a hearing and decree therein, with a possible appeal to the appellate courts, might not be terminated until after the second Monday of March (the date set in the old statute) so that the statute allowing for this contingency makes it possible that if the forfeiture proceedings in the courts are finally completed after the 15th day of January in any year, the auditor can proceed to advertise and sell such lands provided there is sufficient time to give the required two weeks notice of such sale before the first day of July following.

An examination of the applicable provisions of the Code as amended, and the record in this case, discloses that the sale of the forfeited lands was conducted precisely and exactly in the manner provided for in new §5751 GC and new §5752 GC.

In the Fall of 1944 the Board of Revision prepared the so-called "omitted list" and thereupon certified it to the county auditor who caused the prosecuting attorney to file an application to the court of common pleas for the forfeiture of such lands, which was done on April 3, 1945. Thereupon due notice was given by publication upon the order of the court and numerous hearings were had upon objections so that proceedings were not completed and forfeiture declared until June, 1946. Thereupon the auditor proceeded to advertise the sale of the lands. Such advertisement of sale was held at the time provided by §5751 GC, that is to say on a day prior to July 1, upon two weeks notice given subsequent to January 15th.

In the instant case the taxes, assessments, penalties and interest of the forfeited lands had "not been paid before the 15th day of January of each year"; in fact had not been paid before the "15th day of January" of each year for many pre-

vious years, which resulted in their forfeiture to the state by judicial proceedings in the common pleas court according to law.

Upon a careful perusal of the record and comparison with §5751 and §5752 GC, as amended in August, 1943, it is our conclusion that there was full compliance with the provisions thereof.

The original §§5750 and 5751 GC when read in connection with the forfeiture process by an administrative officer alone, meant one thing. These same sections as amended providing for forfeiture by judicial decree have an entirely different connotation. By the completion of judicial proceedings, title vested in the state and no longer resided in the original owner who had adequate and ample notice and every opportunity to protect his interest at every step in the proceedings prior to forfeiture. It is not the purpose of §5750 and 5751 GC as amended, to place a limitation on the authority of the county auditor to sell forfeited lands in order to give the former owner additional time to redeem.

The language of the old sections is generally so similar to the language of the new sections that ambiguity is a natural result. However, when this language is analyzed in the light of the new procedure, the ambiguity is resolved. The list required by the old §5750 GC served a dual purpose, namely, a useful and necessary public record prepared annually showing all forfeited lands in the county and a list of lands to be sold by the auditor after the 15th day of January next ensuing. The list prepared in accordance with the new §5750 GC takes the place of such list but inasmuch as the requirement of forwarding to the state auditor for checking and returning the same by him was omitted, it must have been intended by the legislature to serve only one of the purposes of the former list, namely, an annual public record of all forfeited lands in the county. The provision that the list returned by the auditor of state shall be the list of lands to be sold by the county auditor was stricken from new §5750 GC and §5751 GC.

While it is our opinion that the provisions of §5750 GC and §5751 GC as amended were complied with, it is also our view that the common pleas court was correct in holding that these provisions are directory only.

The county auditor did not act entirely without responsible opinion in this matter, for in 1944 Opinions of the Attorney General of Ohio, Opinion No. 6988 at page 347, we find the following:

"I have no hesitancy in applying that conclusion (it is not necessary to wait until the following year to advertise and con-

duct such sale) to the present situation. In fact it is more obvious as the law now stands than it was then. There is nothing left of section 5750 except the provision that the auditor shall, between the dates mentioned, make a list of all forfeited lands in the county, and sell the same pursuant to the provisions of this chapter. As a matter of fact, the previous steps required would seem to leave little for the auditor to do at this time except to proceed with the sale. There could be no invasion of any rights of delinquent property owners inasmuch as they have already had repeated notices of the delinquency and the proceedings leading to forfeiture of these lands. Accordingly, it is my opinion that the provision of §5750 GC is only directory as to time.

Therefore . . . . it is my opinion that when delinquent lands have been omitted from foreclosure by action of the board of revision . . . . and the common pleas court has confirmed such action and ordered such delinquent lands forfeited . . . . the county auditor may at any time thereafter, up to the first day of July next following, upon giving the published notice required by §5751 GC, proceed to sell such forfeited lands."

While the courts are not bound by the opinions of the attorney general, in the absence of judicial determination or other authority, a county administrative officer such as the county auditor, may properly consider the opinion of the attorney general as respectable authority to follow. We think this is particularly true when the opinion of the attorney general is as persuasive in reason and logic as this opinion appears to be.

On the question of provisions in statutes as to time, 50 American Jurisprudence page 46, Sec. 23 states:

"In many cases, statutory provisions as to the precise time when a thing is to be done, are not regarded as of the essence, but are regarded as directory merely. This rule applies to statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterwards. Thus, where a statute prescribes a time within which a public officer is to perform official acts affecting the rights of others, the general rule is that it is directory as to time, unless from the nature of the act the designation of time must be considered a limitation of the power of the officer."

According to many authorities, the question of whether a statute is mandatory or directory is regarded as depending

largely upon the purpose of the statute. The purpose of **Chapters 14 and 15, §§5704 to 5773 inclusive, GC,** undoubtedly is to expedite the collection of delinquent taxes and assessments for without the payment of such taxes, neither the state nor its political subdivisions could long exist. The further purpose of these chapters is to provide due process of law whereby the delinquent taxpayer who has not redeemed or does not intend to redeem, forfeits his title in the lands to the State. Once the forfeiture is an accomplished fact and title has vested in the State, the State is charged only with the duty to sell to the highest bidder, the lands which the former owner permitted to become burdened with taxes and assessments in excess of their value.

In 51 American Jurisprudence page 913, is the following:

"It is to be noted that the attitude of the courts and legislatures toward tax sales and the necessity of strict compliance with all statutory provisions governing such sales, has changed considerably of recent years. Under the early common law every presumption was against the validity of a tax sale, and it was necessary for one claiming under such a sale to prove to the uttermost detail a compliance with the provisions of the statute. The effect of this was to make tax titles difficult to establish and as a result the state was seriously hampered in the collection of the taxes. Many states have, therefore, passed statutes relaxing the strict requirements of the common law in regard to proof of the validity of tax sales, and the modern tendency of the courts is to regard many provisions theretofore considered to be jurisdictional as merely directory. The only necessary limitations in the absence of specific constitutional provisions is that those in like circumstances shall bear like burdens and that a reasonable opportunity shall be given to the citizen to be heard at every step, imposing the tax burden upon him or his property. The modern tendency seems to apply to the general rule of evidence that a public officer is presumed to do his duty in regard to the details in tax proceedings in the same manner as to any other public act."

There are other authorities to the same effect. 59 Corpus Juris under the heading of "Statutes" at page 1072, Sec. 631 is as follows:

"There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory, but in the de-

termination of this question as of every other question of statu-. tory construction, the prime object is to ascertain the legislative intent from the consideration of the entire statute, its nature, its objects and the consequences which would result from construing it one way or the other, or from such statutes in connection with other related statutes and the determination does not depend on the form of the statute."

32 O. Jur., under heading of "Public Officers" page 938, Sec. 76 reads:

"* * * * and therefore the rule has been laid down that when no rights will be impaired, statutory provisions containing no negative words or implications concerning the time and manner in which public officials shall perform designated acts are directory. Also statutes which relate to the manner and time in which power and jurisdiction vested in a public officer is to be exercised and not the limitation of the power or jurisdiction itself, may be construed to be directory unless accompanied by negative words importing that the act required shall not be performed in any other manner or time than that designated." (citing numerous cases.)

See also: Schick v Cincinnati, 116 Oh St 631; Smith v Barnell, 109 Oh St 246; Richter v Anderson, 56 Oh Ap 291, 385; State ex rel v Board of Education, 127 Oh St 336; 37 O. Jur. 330, Sec. 33; J. L. Ewing, Treas v. Eugene Rheinfrank et al, (C. P.) 13 OO 287.

We have another consideration which we believe is conclusive of the issue in this case and in this respect the instant case can be distinguished from the case recently decided by the Court of Appeals of Hamilton County, entitled Oscar E. Baumann, plaintiff-appellant, v George Guckenberger, Auditor, decided Feb. 17, 1947, 34 OO 311, 47 Abs 456.

The answer of the City of South Euclid being in the nature of a cross-petition praying for affirmative relief was filed in the common pleas court more than one year after the filing of plaintiff's deeds for record. It is therefore our opinion that §5762-1 GC, is decisive of the question herein presented. This section is as follows:

"Action on Validity of Title: In all cases wherein real property in this state is or has been sold under and by virtue of the provisions of Chapter 14 or 16 (Secs. 5704 to 5773 GC) of this title, no action shall be commenced ncr shall any defense

be set up to question the validity of the title of the purchasers at such sale for any irregularity, informality or omission in the proceedings relative to the foreclosure or forfeiture unless such action be commenced or defense set up within one year after the deed to such property is filed for record or one year after the effective date of this act, whichever is longer." (emphasis ours)

This is a statute of limitations to make the auditor's deed conclusive in respect to any questions of irregularity, informality or omission in proceedings covering the sale of lands under the foreclosure and forfeiture laws of Ohio. The Attorney General's Opinion No. 7118 (1944, A. G. O.) is we believe very sound, as follows:

"This is a statute of limitations, the purpose of which is to put at rest questions of irregularity, informality or omission in proceedings covering the sale of lands under the foreclosure and forfeiture laws of Ohio. Over a long period of time, much doubt has been felt and expressed concerning the validity of titles passed by and through these sales. Through House Bill 260 (120 O. L.) the legislature made certain well justified changes in this field of law, with special emphasis on land forfeiture, and its sale as forfeited land and as part of this enactment sought to repose such sales of former times."

The following from 51 American Jurisprudence page 952 Sec. 1096 under heading of "Taxation" is in point:

"The legislature may make a tax deed conclusive evidence of the regularity of proceedings rendered up to the execution of the deed in respect to matters not essential to the taxing power and which are not jurisdictional but merely directory, and it may, by way of a statute of limitations, make a tax deed at least when it is not void on its face, conclusive evidence of the legality of the proceedings after the lapse of a certain period of time."

Applying the principle of the statute to the instant case, it seems to us that the omission or irregularity by the county auditor complained of herein by the City of South Euclid, if it is an irregularity or omission, cannot be attacked successfully by an action commenced more than one year after the deed to such property is filed for record. We think the obvious purpose of this statute of limitations is to bar claims

such as are here presented. Consequently the action brought by way of cross-petition by the City of South Euclid is barred and all other claims of other defendants are likewise barred for the same reason.

This opinion would not be complete without some further reference to the opinion of the Court of Appeals of Hamilton County, Ohio, in the case of Baumann v Guckenberger auditor, supra. In that case the court was considering an appeal upon questions of law from the common pleas court of Hamilton County, wherein an action was instituted to obtain a declaratory judgment upon the status of certain real estate sold by the auditor of Hamilton County as forfeited land. A deed had not been delivered in that case. In fact the purpose of the petition was to obtain a declaratory judgment upon the status of the real estate and as to whether or not the auditor, under the circumstances, could deliver a deed conveying good title. The court there did not have a situation such as is here presented where the statute of limitations, §5762-1 GC is invoked as a defense, and which we hold is decisive of the issues herein involved. However, the court there held that the failure of the auditor to comply with the provisions of §5750 GC to make a list was fatal to the validity of the sale. As will be noted the view expressed by this court in this respect is contrary to the decision of the Court of Appeals of Hamilton County. It is for this reason alone that this court has certified the case to the Supreme Court on the ground of conflict.

Holding the views above set forth, the entry in this case is as follows:

"Decree for plaintiff quieting title as prayed for in plaintiff's petition. Relief prayed for by defendant-appellant, City of South Euclid, denied and cross-petition dismissed at defendant's costs. Order See Journal. Exceptions.

"This case is certified to the Supreme Court on the ground of conflict with the decision of the Court of Appeals of Hamilton County in case No. 6758 on the docket of said court, entitled, Oscar E. Baumann, plaintiff-appellant, v George Guckenberger, Auditor of Hamilton County, defendant appellee, decided February 17, 1947."

MORGAN and SKEEL, JJ, concur.