McCARTY et al. v. CRIPE, Collector of Internal Revenue.

No. 10687.

United States Court of Appeals Seventh Circuit.

Feb. 9, 1953.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Harvey M. Spear, Robert N. Anderson, Sp. Assts. to the Atty. Gen., Marshall E. Hanley, U. S. Atty., Indianapolis, Ind., for appellant.

Elbert R. Gilliom, Richard L. Gilliom, Robert D. Armstrong, Indianapolis, Ind. (Gilliom, Armstrong & Gilliom, Indian-

apolis, Ind., of counsel), for plaintiffs-appellees.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiffs, executors of the estate of George J. Marott, deceased, brought this suit to recover overpayments made to the defendant, Collector of Internal Revenue, of the decedent's income tax for the years 1941 through 1945, in amounts of asserted deficiencies and interest determined by the Commissioner after the decedent's death in 1946. The District Court made its special findings of fact and conclusions of law and, predicated thereon, rendered judgment for plaintiffs in the total sum of $116,899.90, which included the amount of the alleged overpayments and interest thereon. While the appeal was taken from this judgment, defendant evidently acquiesces in its validity except as to that portion predicated upon Count 4 of the complaint, referred to as the Euclid Farm transaction. At any rate, defendant here attacks only this portion of the judgment.

A narration of the facts, which so far as they are evidentiary are not in dispute, appears advisable prior to a statement of the contested issues. The Euclid Farm, located in Cuyahoga County, Ohio, was purchased by George J. Marott, the decedent, in 1916, at a cost of $34,425.16, and was continuously owned by him until 1944. During that time he was engaged in the trade and business of buying and selling real estate, including its development and subdivision. The Euclid Farm was purchased and held by him for that purpose. The general economic depression of the 1930's greatly depressed real estate and property values and the decedent did not subdivide the land but held it as undeveloped farm land. Street and other public improvements were being made in the vicinity of the Euclid Farm, on account of which improvement assessments were levied thereon, which the decedent neglected or refused to pay. The total amount of said delinquent assessments and taxes with interest and penalties by the year 1943 amounted to $38,668.08.

On November 12, 1943, proceedings were instituted by the county officials of Cuyahoga County, Ohio, wherein the land was located, in the Court of Common Pleas of said county, against Marott and others for the foreclosure of the liens on said real estate for said assessments and taxes and for the sale of the real estate to satisfy the same. On January 31, 1944, the court ordered said liens foreclosed and ordered the sheriff of said county to sell said real estate and make return thereof to the court. The sheriff reported that on April 10, 1944, he offered the land at public auction and received approximately twenty-five bids, the highest of which was by George E. Rich, trustee, who bid in the property in that name for the sum of $15,000, which amount he paid in full. Thereupon the court, on April 25, 1944, found that the sale was legal and in all respects in conformity to law, approved the same, and directed the sheriff to execute and deliver to George E. Rich, trustee, a good and sufficient deed. The sheriff in compliance with this order issued the deed to Rich.

Subsequently, on June 3, 1944, Rich conveyed the land to the Indian Hills Estates Company, an Indiana corporation which then owned and was developing a residential addition to the city of Euclid contiguous to Euclid Farm. At that time, the decedent was the owner of more than 50% in value of the outstanding stock of this corporation. The $15,000 paid to the sheriff by Rich was furnished to the latter by the decedent. When the farm was conveyed by Rich to the corporation, entries were made on the books of the latter showing $15,000 furnished by Marott as an open account loan, owing by it to him, thereby increasing the unpaid balance of open account loans made by him to the corporation from $385,975.04 to $400,975.04.

We think this statement of the facts is sufficient to properly bring into focus the contested issues. No question is made but that the decedent lost $34,425.16, his investment in the Euclid Farm, and that it was an allowable deduction generally for uncompensated business losses. However, defendant contends that such deduction was precluded by Sec. 24(b) (1) (B) of the In-

ternal Revenue Code, 26 U.S.C.A. § 24, the material portion of which is as follows:

"In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly * * * between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual * * *."

As will be gleaned from the statement of facts, there is no question but that the farm was sold at a sheriff's sale, purchased by Rich as trustee with money furnished by the decedent, and shortly thereafter conveyed by the trustee to a corporation in which the decedent owned more than 50% of the outstanding stock. Thus, the question for decision is whether the transaction by which the corporation acquired the title and became the owner of the farm was a sale or exchange of property "directly or indirectly" between the taxpayer and the corporation within the intendment of Sec. 24(b) (1) (B).

The defendant in an attempt to bring the transaction within the language of the provision in question resorts to some rather strained and unrealistic reasoning. It is argued, for instance, that the court "approved a transfer of title from the taxpayer to George E. Rich" and that "the purchaser took his title to the farm from the previous owner (e. g. the taxpayer) and not from but only through the sheriff." Further it is argued that the sheriff "merely served as the county court's agent for the purpose of effecting the transfer of title from the taxpayer to George E. Rich," and that the sheriff "only implemented the technical transfer of title from the taxpayer to the purchaser."

▮ We do not think it of sufficient importance to require a detailed discussion but we have examined the authorities sufficiently to be convinced that under Ohio law there is no merit to the defendant's argument in this respect. As was stated

in Gwynne v. Niswanger, 20 Ohio 556, 564:

"A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deed; the former title can be of no service to him, nor can it prejudice him."

See also Delmond v. Board of Investors Co., Ohio App., 74 N.E.2d 376, 379, 35 O.Op. 419, 421, and Hefner v. Northwestern Life Insurance Co., 123 U.S. 747, 751, 8 S.Ct. 337, 31 L.Ed. 309.

Both sides rely strongly upon McWilliams v. Commissioner, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750. While we do not regard this case as decisive of the question in issue because of the marked distinction in the facts, we are of the view that its rationale is more favorable to plaintiffs than to defendant. The latter argues that the decedent had the same economic interest after the transaction was completed as before; in fact, it is asserted that such interest was bettered because prior to the transaction he owned the farm subject to the liens, and after it was completed he was freed of the liens and in effect owned the farm by virtue of his interest in the corporation. Upon this premise, which we think is of doubtful verity, defendant relies upon the following statement in the McWilliams opinion, 331 U.S. at page 699, 67 S.Ct. at page 1480:

"The one common characteristic of these groups [those designated by the statute] is that their members, although distinct legal entities, generally have a near-identity of economic interests. It is a fair inference that even legally genuine intra-group transfers were not thought to result, usually, in economically genuine realizations of loss, and accordingly, that Congress did not deem them to be appropriate occasions for the allowance of deductions."

This statement as applied here does little more than beg the more important question

as to whether the sale was between designated groups, that is, was it between the decedent and his corporation? The court, after reviewing the pertinent legislative history of the section, stated, 331 U.S. at page 700, 67 S.Ct. at page 1481:

"We conclude that the purpose of § 24(b) was to put an end to the right of *taxpayers to choose,* by intra-family transfers and other designated devices, *their own time* for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted." (Italics supplied.)

It is difficult to conceive that the purpose thus stated could encompass an involuntary sale or transfer. The transaction in controversy obviously was involuntary insofar as the decedent was concerned. The property was taken from him and sold by operation of law. He was without choice as to the time when the state would proceed against the property and, consequently, could not have selected the time for the realization of a taxable loss, as was the situation in the McWilliams case. Neither is there the slightest indication of any "prearrangement" between the decedent and his corporation or anybody else. The property was purchased at a public sale where the bidding was spirited, and there is a strong presumption that it sold for not less than its fair value. Defendant attempts to meet the involuntary nature of the transaction insofar as the taxpayer is concerned by the specious argument that he could have prevented the foreclosure and the resultant sale at any time by discharging the liens to which the property was subjected. The record does not disclose and we think it immaterial why the decedent neglected or refused to pay the assessments made against the property. There is not even a suspicion that his neglect or refusal was any part of a scheme or device having to do with the incidence of taxation.

Cases are cited by the defendant in support of the familiar principle that the substance and not the form of the transaction should control. We think this principle is of no benefit to defendant because the substance of this transaction is that the taxpayer's property was sold by the state without his consent or approval.

We agree with the finding of the District Court "that said judicial tax sale of said Euclid Farm land was not a sale or exchange, directly or indirectly, between the decedent and said George E. Rich, as Trustee for said Indian Hills Estates Company, or said company itself * * *." It was a judicial tax sale to satisfy public liens for taxes and improvement assessments made by the Ohio county sheriff acting under an appropriate court decree.

It follows that the judgment appealed from must be and is hereby affirmed.