**ENID ICE AND FUEL COMPANY,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

Nos. 6019–6021.

United States District Court
W. D. Oklahoma.
April 18, 1956.

Nathan Scarritt, Enid, Okl., E. S. Champlin, Fort Worth, Tex., and D. J. Oven, Jr., Enid, Okl., and Russell B. McCabe, Oklahoma City, Okl., for plaintiff.

Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

CHANDLER, Chief Judge.

The plaintiff-corporation has sued to recover taxes paid as a result of the disallowance of a deduction for a loss. Upon trial to the court the following facts were found:

In 1936 the company owned property upon which its plant was located, having acquired the land several years earlier for $12,558.33. In 1936 the company moved its plant to another location but retained the land in question as an outlet for its products. In 1938 it was determined that such an outlet would not be profitable and the company then sold the buildings for salvage. The buildings were removed by the middle part of 1939 and the vacant land was then offered for sale during that year and 1940 but no buyer could be found. The company then decided to abandon the property and, although able to do so, refused to pay the ad valorem taxes for 1940, these taxes becoming delinquent on January 1, 1941. In 1941 the property was charged off the books of the company and, upon inquiry, the manager informed the County Treasurer and the County Assessor that the property was being abandoned. In November, 1941 the County Treasurer sold the property to the county, there having been no purchasers at the public sale. In December of that same year the county assigned its rights to Joe Champlin, the brother of Helen C. Oven who owned 320 shares of the company's 739 shares outstanding and the son of H. H. Champlin who owned 200 shares. There had been no discussion, agreement or intent by any of the parties that Joe Champlin would purchase the land from the county or that any of the shareholders would ever own or claim any further interest in the property.

In 1943, some three and one-half months prior to the expiration of the right to redeem under the Oklahoma law, the company gave Joe Champlin a quitclaim deed to clear his title. On that same day Joe Champlin conveyed a one-half interest in the property to Helen C. Oven.

The company claimed the purchase price of the lots as an ordinary loss in 1941. The deduction was disallowed upon the theory that the loss was not realized until 1943 when the right of redemption expired. The company claimed the loss again in 1943 and again it was disallowed, this time on the basis that the loss actually occurred prior to 1941. The issue presented is whether there was a deductible loss and if so, in what year.

Section 23(f) of the Internal Revenue Code of 1939, 26 U.S.C.A., permits a corporation to deduct "losses sustained during the taxable year and not compensated for by insurance or otherwise". Losses due to abandonment of worthless property are properly deductible under this section. However, the taxpayer claiming such a deduction must show both that the property became worthless and that it was abandoned in the taxable year for which the deduction is claimed. Commissioner of Internal Revenue v. McCarthy, 7 Cir., 129 F.2d

84; Superior Coal Company v. Commissioner, 7 Cir., 145 F.2d 597.

██ At what time the property became worthless is a question of fact to be determined from the evidence. Rhodes v. Commissioner, 6 Cir., 100 F.2d 966. Where property gradually deteriorates in value the question is difficult and has given the courts trouble. The Rhodes case, supra, indicates that the court should not rely on hindsight in determining the proper year but must look at the situation as it appeared at the time, having in mind the policy that the taxpayer should not be allowed to arbitrarily choose the year in which to take the deduction. Here, the evidence shows that the company intended to use the property in its business until the latter part of 1938 and then tried to sell the property in 1939 and 1940. Until the efforts to sell had been made and had failed there was no way for the company to know that the property was worthless. There is no evidence that the taxpayer was merely trying to hold the property until a more favorable year to take the deduction. Thus the court finds that the property became worthless in 1941.

██ An actual abandonment of worthless real property is a sufficient realization of loss for tax purposes, a technical, legal abandonment not being required. The existence of a statutory right to redeem does not prevent the deduction of a loss where the right is of no substantial value to the taxpayer. Bickerstaff v. Commissioner, 5 Cir., 128 F.2d 366. Refusal to pay the ad valorem taxes when able to do so is not in itself sufficient evidence of abandonment but that fact together with other evidence of abandonment may be sufficient. Rhodes v. Commissioner, supra. Here, in addition to the refusal to pay the taxes

and allowing the property to be sold to the county, the taxpayer made its intention known to the county officials, charged the property off its books, and had no intention to ever again claim a right to the property. The right to redeem was of no substantial value to the company or its shareholders as the property was not worth the amount of the unpaid taxes. Therefore, absent the subsequent assignment by the county to Joe Champlin, there was realization of a loss in 1941 which was deductible.

██ The government argues that the acquisition of the property by Joe Champlin indicates that the company never abandoned the property and that the whole series of transactions was an indirect sale within section 24(b) of the 1939 Code which disallows the recognition of losses from sales or indirect sales between controlled corporations and shareholders or certain relatives of shareholders. As to the first point, the finding that at the time of the tax sale none of the parties intended or had any idea that Joe Champlin would purchase the property shows that there was an actual and complete abandonment prior to the assignment to Joe Champlin. The second argument is more difficult but in a case stronger on its facts than the present one the court held that section 24(b) did not apply where there was no prearrangement of the sale by the county to the purchaser, the theory being that since there was no prearrangement there was no sale. McCarty v. Cripe, 7 Cir., 201 F.2d 679. It is clear that there was no prearrangement in the present case and thus no sale within the purview of section 24(b).

The deduction claimed in 1941 should have been allowed and judgment is rendered accordingly.