ROBERT H. McNEILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 54804. Filed March 11, 1957.

*Wilton H. Wallace, Esq.,* and *Henry F. Lerch, Esq.,* for the
petitioner.
*Thomas N. Chambers, Esq.,* for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in peti-
tioner's income tax for the indicated years as follows:

| Year | Deficiency |
| --- | --- |
| 1946 | $2. 762. 66 |
| 1947 | 2. 096. 86 |

The issues presented for our decision are the correctness of the re-
spondent's action (1) in disallowing a deduction claimed by petitioner
as an abandonment loss in the amount of $11,000 arising from the sale
of his land for nonpayment of taxes and (2) in determining that bad
debts in the amount of $2,685 are deductible only as nonbusiness bad
debts. An additional issue presented by the pleadings concerning the
deductibility of medical expenses is agreed by the parties to depend
for its resolution solely upon our determination of the foregoing issues
and accordingly is not further discussed herein.

*Issue 1.*

### FINDINGS OF FACT.

Robert H. McNeill (sometimes hereinafter referred to as petitioner)
is a resident of the District of Columbia and filed his income tax re-
turns for 1946 and 1947 with the then collector of internal revenue at
Baltimore, Maryland.

On November 29, 1924, petitioner acquired 834 acres of land located
near Altoona, Pennsylvania, known as the Wopsononock properties,
from Herman Van Senden and his wife. Petitioner previously had
advanced funds to a contractor who was constructing a railroad across
the land. In addition, petitioner guaranteed payment of a mortgage
placed on the property by the contractor in favor of Van Senden.

Upon default by the mortgagor, petitioner acquired the property at a foreclosure sale in order to protect himself from loss on the mortgage. At the time he acquired the property it was petitioner's intention to develop and subdivide the land and sell lots.

The purchase of the foregoing property was consummated by the execution by petitioner of two promissory notes in the amounts of $12,500 and $7,500 payable to H. W. Van Senden and Harry Lamson, respectively, and the execution of a mortgage as security for payment of the notes and a bond in the amount of $40,000. Petitioner eventually paid $14,500 on the two notes.

He desired to sell the lots to the public either at auction or through separate sales transactions. Petitioner engaged experienced engineers to survey the property and prepare plats of the land to be offered for sale.

At a cost of $3,000, McNeill built a road through the forest to the top of the plateau where the lots held for sale were located.

Petitioner repeatedly advertised for the sale of the lots. He employed a prominent realtor in the community to solicit sales of the property, and made extensive efforts over a period of several years to sell the lots. All such efforts were completely unsuccessful.

Attempts were made to construct an airport project within the area, and also to interest the State of Pennsylvania in developing a public park on the land, but without success. Petitioner's expenses in connection with his attempt to develop an airport on the land amounted to $2,500.

In 1940 the commissioners of Blair County, Pennsylvania, seized 458 acres of the property in question because of nonpayment of realty taxes and retained title thereto for 2½ years, attempting meanwhile to sell it to a private owner after failing to dispose of the property to a public bidder for an amount equal to the unpaid taxes. During 1942 the property was conveyed by the county commissioners to the City of Altoona, Pennsylvania. After the acquisition of 458 acres of the Wopsononock tract by Blair County, and later by the City of Altoona, petitioner continued his efforts to sell all or part of the land since he retained a right of redemption therein.

In May 1946, petitioner made an offer to the Estate of H. W. Van Senden to satisfy the mortgage outstanding against the Wopsononock property in the amount of $5,000 by payment of that amount, but the offer was rejected. The City of Altoona eventually offered to sell the property to petitioner. Through petitioner's intervention, on December 5, 1946, title to the property was transferred from the City of Altoona directly to the Royal Village Corporation in consideration of $750, an amount less than the unpaid real estate taxes outstanding against the property.

At the time of the sale of the property in question to the Royal Village Corporation, petitioner's right of redemption in the property expired and he thereby lost his opportunity to recover his investment therein.

The capital stock of the Royal Village Corporation as of December 5, 1946, was held as follows:

| Name | Relationship | Share |
|---|---|---|
| Robert H. McNeill | | 150 |
| Cora B. McNeill | Wife | 141 |
| Frances A. Easley | Daughter | 5 |
| George H. McNeill | Son | 5 |
| | | 301 |

During 1952 petitioner paid $5,250 to the Estate of H. W. Van Senden in full settlement of all claims of that estate against him with respect to the Wopsononock property and in full satisfaction of the outstanding mortgage thereon. The title to the Wopsononock tract remained in the Royal Village Corporation from the time of its acquisition on December 5, 1946, and was held by the corporation at the time of the foregoing payment by petitioner.

While practicing law in Washington, D. C., petitioner has participated in a number of real estate developments in Maryland, Virginia, the District of Columbia, and North Carolina. In addition, he occasionally has promoted and financed the construction of various buildings, including office buildings in Washington, D. C. However, petitioner has never held a real estate license.

In his individual income tax return for 1946, petitioner deducted $11,000 as a loss arising from the abandonment of the Wopsononock property because of the expiration of his right of redemption therein during that year.

Petitioner has not in fact abandoned the Wopsononock property. Further, petitioner was not engaged in the real estate business during the years in issue and the tract of land here involved was not held by him primarily for sale to customers in the ordinary course of his trade or business at the time of its sale by the City of Altoona on December 5, 1946.

### OPINION.

Respondent disallowed the deduction in the amount of $11,000 taken by petitioner on his income tax return for 1946 on the grounds, first, that petitioner had not in fact abandoned the property in question and, second, that the transaction constituted an indirect sale between related taxpayers and recognition of the loss is therefore pro-

hibited by section 24 (b) (1) (B) of the Internal Revenue Code of 1939.[1]

In the alternative, respondent asserts that if any loss is allowable it is at most a long-term capital loss arising from the sale during 1946 of a capital asset, relying upon the decision of the Supreme Court in *Helvering* v. *Nebraska Bridge Supply & Lumber Co.*, 312 U. S. 666.

Petitioner contends that upon the expiration of his right of redemption in the property during 1946 and the sale thereof to the Royal Village Corporation, he sustained a business loss, deductible in full for that year.

In his petition and opening statement, petitioner took the position that the loss arose from his abandonment of the Wopsononock property. On brief, his principal argument is that at the time of sale to the Royal Village Corporation in 1946, the property in question was held by him primarily for sale to customers in the ordinary course of his trade or business, and that the resulting loss was an ordinary loss rather than a capital loss.

In order to establish the abandonment by petitioner of his property, it is incumbent upon him by reference to the surrounding circumstances to show the occurrence of an act or event disclosing his intention to abandon. *Talache Mines, Inc.* v. *United States*, 218 F. 2d 491; *Belridge Oil Co.*, 11 B. T. A. 127; *Reuben H. Donnelley Corporation*, 26 B. T. A. 107; *W. B. Davis & Son, Inc.*, 5 T. C. 1195. Mere discontinuance of use alone is insufficient. *W. B. Davis & Son, Inc.*, *supra*. The record herein discloses no evidence of voluntary abandonment by petitioner of his land. He simply acquiesced in the action of Blair County, Pennsylvania, in seizing the property in 1940. Moreover, his conduct in further attempting to sell the land after its seizure by Blair County and in offering to satisfy the mortgage outstanding against the property in May 1946 demonstrates his intention

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

\* \* \* \* \* \* \*

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;

\* \* \* \* \* \* \*

(2) STOCK OWNERSHIP, FAMILY AND PARTNERSHIP RULE.—For the purposes of determining in applying paragraph (1), the ownership of stock—

\* \* \* \* \* \* \*

(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

\* \* \* \* \* \* \*

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants: \* \* \*

to retain control over it. Such conduct is clearly inconsistent with abandonment.

We are likewise unable to agree with petitioner's contention that the property at the time of its sale by the City of Altoona, Pennsylvania, was held by him primarily for sale to customers in the ordinary course of his business. Petitioner has never held a real estate license. The record herein does not clearly disclose the frequency, continuity, and substantiality of his sales of real estate or the extent of his real estate activities generally. So far as herein appears, petitioner has never held himself out to the public as being engaged in any phase of the real estate business. Cf. *Home Co.* v. *Commissioner*, 212 F. 2d 637; *Dunlap* v. *Oldham Lumber Co.*, 178 F. 2d 781; *W. T. Thrift, Sr.*, 15 T. C. 366; *Arthur E. Wood*, 25 T. C. 468. Moreover, he had not sold so much as one parcel of the Wopsononock tract since the time of its acquisition in 1924. We are therefore unable to find that the land in question at the time of sale was held by petitioner for sale to customers in the ordinary course of his trade or business.

In *Helvering* v. *Nebraska Bridge Supply & Lumber Co.*, *supra*, the Supreme Court reversed a decision of the United States Court of Appeals for the Eighth Circuit and held that a loss arising from the expiration of the taxpayer's equity of redemption in lands foreclosed by the State for delinquent realty taxes was a loss arising from a sale within the meaning of section 117 of the Revenue Act of 1934, a provision similar in effect to section 117 of the 1939 Code. Accordingly, any loss resulting from the expiration of his equity of redemption in the land in question by petitioner herein is in the nature of a capital loss and, if allowed, is subject to the limitations of section 117 (d) of the 1939 Code.

With respect to the respondent's contention that section 24(b)(1) (B) of the Code precludes the allowance of any deduction for the loss in question, the terms of that section provide that—

no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly * * * between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual * * *

The petitioner acquired the Wopsononock property by deed on November 29, 1924. The authorities of Blair County, Pennsylvania, seized the property because of delinquent taxes on January 30, 1940, and conveyed it to the City of Altoona in 1942, which in turn sold it to the Royal Village Corporation on December 5, 1946. Petitioner's right of redemption in the property was terminated as of the latter date. 72 Pa. Stat. sec. 6105.1. Petitioner holds one share less than 50 per cent of the Royal Village stock, and his wife, son, and daughter hold the balance. It is clear that petitioner and the corporation are

related taxpayers within the meaning of section 24(b)(1)(B), and the sole issue remaining is the question whether the aforementioned transaction constitutes a sale or exchange between them, directly or indirectly.

In support of his position, the petitioner relies on the decision of the United States Court of Appeals for the Seventh Circuit in *McCarty* v. *Cripe*, 201 F. 2d 679. The taxpayer there was engaged in the business of buying and selling real estate. He purchased in 1916 a tract of undeveloped farm land with the intention of subdividing it and selling lots. In 1943 proceedings for the foreclosure of liens on the property for delinquent improvement assessments and realty taxes were commenced by Cuyahoga County, Ohio, where the land was located. Subsequently, the land was sold at public auction. Approximately 25 bids were received and the property was awarded to the highest bidder who paid for it with funds furnished by the taxpayer. The purchaser subsequently conveyed the land to a corporation which was controlled by the taxpayer, who owned more than 50 per cent of the outstanding stock thereof. The land was situated adjacent to another tract which the corporation owned and was developing for residential purposes.

The taxpayer there, as here, took the position that his investment in the property so conveyed was deductible as a business loss, as a consequence of the foregoing transaction. The Court of Appeals upheld his contention on the grounds, first, that the foreclosure sale was involuntary and the taxpayer therefore could not have selected the time for the realization of a loss; second, that there was no evidence of prearrangement between the decedent and his corporation; and, finally, that the land was sold at a public auction at which the bidding was spirited and there was consequently a strong presumption that the property sold for not less than its fair market value.

In the instant case, however, the property was not sold at a public auction. We have found as a fact that title to the property was conveyed directly to the Royal Village Corporation because of petitioner's intervention. Thus, his loss resulted from his action in causing the tract of land in question to be conveyed to that corporation. Had he accepted a conveyance himself he would have realized no loss.

In addition, it is difficult for us to find here that there is no evidence of prearrangement between the petitioner and his corporation, as was held by the Court of Appeals in *McCarty* v. *Cripe, supra.*

Since petitioner here was without competition in bidding for the property, we cannot presume that the price paid for the land was equal to its fair market value.

Finally, as previously noted, we are unable to find that petitioner herein was engaged in the business of buying and selling real estate at the time of the sale in question, as was the case in *McCarty* v. *Cripe, supra.*

For the foregoing reasons, we are of the opinion that *McCarty* v. *Cripe, supra,* is not controlling of the situation here presented.

In *McWilliams* v. *Commissioner,* 331 U. S. 694, the taxpayers, husband and wife, each sold stock on the open market and shortly thereafter each purchased like shares in the same company. At the time the orders for sale were placed by each taxpayer for his individual account, the broker was instructed to purchase a like number of the same shares at as near the same price as possible for the account of the other. The stock certificates subsequently acquired at the time of purchase were different from those previously sold. In each instance the broker was advised that the sale was for the purpose of establishing a tax loss. Each taxpayer deducted the losses resulting from the foregoing sales in his individual income tax return. In holding that such losses were not deductible because the sales were indirect sales between husband and wife, the Supreme Court described the congressional policy and purpose underlying the enactment of section 24 (b) of the 1939 Code as follows:

Section 24 (b) states an absolute prohibition—not a presumption—against the allowance of losses on any sales between the members of certain designated groups. The one common characteristic of these groups is that their members, although distinct legal entities, generally have a near-identity of economic interests. It is a fair inference that even legally genuine intra-group transfers were not thought to result, usually, in economically genuine realizations of loss, and accordingly that Congress did not deem them to be appropriate occasions for the allowance of deductions.

\*    \*    \*    \*    \*    \*    \*

We conclude that the purpose of § 24 (b) was to put an end to the right of taxpayers to choose, by intrafamily transfers and other designated devices, their own time for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted.

We are unable to conclude from the record before us that the sale in question created an actual break in the continuity of petitioner's investment. That petitioner regarded his investment in the land as surviving the sale to the Royal Village Corporation is indicated by the fact that he personally satisfied the outstanding mortgage in 1952, rather than the corporation. Further, as we have previously mentioned, petitioner was offered the property by the City of Altoona and had he accepted a deed in his own name, he would not have realized a loss. Without his influence and intervention the conveyance to the Royal Village Corporation would not have been made. We

are not convinced from the record herein that petitioner here, as in *McWilliams* v. *Commissioner, supra,* did not actually negotiate the sale for the purpose of creating a tax loss. Cf. *DuPont* v. *Commissioner,* 118 F. 2d 544; *Bank of America National Trust & Savings Assn.,* 15 T. C. 544, affd. 193 F. 2d 178; *Crown Cork International Corporation,* 4 T. C. 19, affd. 149 F. 2d 968. Moreover, the record does not show that petitioner would not have been able to postpone the sale to the Royal Village Corporation on December 5, 1946, until a subsequent year and thereby select the time for the realization of his loss. Accordingly, the transaction here in issue appears to fall within the scope of the congressional policy expressed in section 24 (b) of the 1939 Code, and, in our view, was of a type which Congress by the enactment of that section intended to reach.

A question similar to the issue herein was presented for our decision in *Thomas Zacek,* 8 T. C. 1056. The taxpayer there owned a fractional interest in mortgaged property upon which the mortgage interest and realty taxes became delinquent. The mortgagees, who were brothers of the taxpayer, commenced foreclosure proceedings in the Nebraska courts, which the mortgagors resisted. The court ordered a foreclosure sale of the property and it was sold to the mortgagees for an amount equal to the outstanding mortgage principal and interest, taxes, and costs. The taxpayer claimed a deduction for his share of the loss from the foreclosure sale of the property as a long-term capital loss. The respondent disallowed the loss on the ground that the foreclosure sale constituted a sale between members of a family, within the meaning of section 24 (b) (1) (A) of the 1939 Code. We there held that the language of section 24 (b) (1) (A) included involuntary sales and that the transaction in question constituted a sale of property indirectly between members of a family, thus precluding the deduction of any loss arising therefrom.

We are of the opinion that our holding in *Thomas Zacek, supra,* is dispositive of the issue here presented. Prior to the sale of the Wopsononock property to the Royal Village Corporation in 1946, petitioner retained a right of redemption therein. When petitioner was offered the property by the trustee of the City of Altoona, Pennsylvania, for $750, instead of accepting title in his own name he caused title to be transferred to a corporation wholly owned by himself, his wife, and immediate family. Although he did not himself actually sell the property to the Royal Village Corporation, through his direct intervention alone title was conveyed to the corporation. Consequently, we are of the opinion that section 24 (b) (1) (B) of the Code is applicable to the sale in issue and the allowance of a capital loss realized thereon is by that section prohibited.

*Issue 2.*

FINDINGS OF FACT.

Petitioner's business was that of a practicing attorney. He was not in the business of lending money.

Petitioner made 2 loans to Leslie D. Measell during 1947, the first on May 22, and the second on July 18, in the amounts of $1,450 and $650, respectively. The $1,450 loan subsequently was reduced by payments of the creditor to $525. In addition he endorsed a check in the amount of $100 drawn by Leslie D. Measell on February 20, 1947, and subsequently was required to satisfy the payee.

Measell was a real estate agent who had sold real estate for petitioner. He was also a client of petitioner. Measell was frequently in straitened financial circumstances, particularly during 1947. It was his practice as a real estate agent to endeavor to collect his commissions in advance or to attempt to assign his rights to commissions at a discounted figure. On a number of occasions he contacted petitioner concerning the assignment of commissions at a discount prior to their receipt and petitioner purchased several such assignments. All of the assignments purchased by petitioner during 1947 proved to be fictitious. Petitioner attempted to collect the loans made to Measell during 1947, and brought suit against him, but was unable to collect on the judgment. Petitioner charged off $1,275, representing the unpaid balances on the 3 foregoing obligations, during 1947 and deducted that amount on his income tax return for that year as a business bad debt.

Petitioner also loaned $400 to Arthur L. Langston, Jr., on June 7, 1947, in exchange for a 90-day promissory note. Langston was a son-in-law of Measell and was employed by him in his real estate business. Langston paid $50 on the foregoing note leaving an unpaid balance of $350. Petitioner was unsuccessful in his attempts to collect the unpaid balance of the loan during 1947 and charged off the debt during that year. Petitioner deducted the unpaid balance of the loan as a business bad debt on his return for 1947.

Petitioner charged off $360 during 1947 arising from his liability as endorser of a promissory note drawn by Charles E. Marsh. Marsh was a client of petitioner and secretary to the Columbia Title Company. Petitioner valued his relationship with Marsh because of his affiliation with the Columbia Title Company. Marsh died shortly after the endorsement of the foregoing note and petitioner was required to satisfy the face amount of the note, with interest. He deducted $360 thus paid by him as endorser as a business bad debt on his income tax return for 1947.

During 1947 petitioner charged off $250 representing the balance of a promissory note drawn in petitioner's favor by Tom Kinnevey on March 25, 1946. Kinnevey was an assistant to an attorney who rented office space to petitioner. A deduction in the amount of $250 was claimed by petitioner as a business bad debt on his 1947 return.

Petitioner further charged off $450, representing the unpaid balance on a promissory note drawn by Kelly Kash, which petitioner endorsed. Kash was an attorney who shared office space with petitioner. Petitioner normally referred to Kash the overflow of his business, but Kash was unable to make a living practicing law and petitioner endorsed the foregoing note in order to assist him in alleviating his financial difficulties. Kash subsequently died while residing in the State of Kentucky and petitioner was unable to collect the unpaid balance of the note. Accordingly, he deducted $450 as a business bad debt on his return for 1947.

### OPINION.

Petitioner claimed a total deduction of $2,685 in his income tax return for 1947 representing bad debts arising from individual loans and accommodation endorsements of checks and promissory notes. Petitioner contends that the loans were incurred in connection with his business as a practicing attorney and that they therefore constitute business debts which became worthless during 1947. Respondent does not question the worthlessness of the debts or the year in which they are deducted as worthless, but contends that they represent nonbusiness bad debts and are consequently subject to the limitations of section 23 (k) (4) of the 1939 Code.

The purposes of petitioner's advances and endorsements and his relationship with the debtors were meagerly described at the hearing. We are unable to conclude from the record that the aforementioned loans bore a proximate relationship to petitioner's law practice, either at the time the loans were made or at the time they became worthless. We are convinced also that he was not in the business of lending money and that the transactions here involved are isolated in character. Since petitioner has failed to establish that the foregoing transactions were related to his professional activities as an attorney, we must agree with respondent's contention that the debts in question were personal in nature and are deductible only as nonbusiness bad debts under section 23 (k) (4) of the 1939 Code. *Putnam* v. *Commissioner,* 224 F. 2d 947, affd. 352 U. S. 82. Cf. *Stuart Bart,* 21 T. C. 880.

*Decision will be entered for the respondent.*