Estate of Dominick F. Pachella, Deceased, and Petronila R. Pachella, Administratrix and Surviving Spouse of Dominick F. Pachella, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Herbert A. Chary and Ann Chary, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 78435, 78436. Filed November 28, 1961.

*Alfred W. Kiefer, Esq.*, for the petitioners in Docket No. 78435.
*Herbert A. Chary, Esq.*, for the petitioners in Docket No. 78436.
*Sheldon Seevak, Esq.*, for the respondent.

### OPINION.

FAY, *Judge:* These proceedings involve deficiencies in income tax and additions to tax for the taxable years 1950 to 1955, inclusive, as follows:

| Docket No. | Year | Income tax | Additions to tax, I.R.C. 1939 | |
|---|---|---|---|---|
| | | | Sec. 294(d)(2) | Sec. 294(d)(1)(A) |
| 78435 | 1950 | $1,454.76 | | |
| | 1951 | 3,551.00 | | |
| | 1952 | 1,807.26 | | |
| | 1953 | 1,590.00 | | |
| | 1954 | 324.50 | $77.99 | $120.25 |
| | 1955 | 2,093.28 | | |
| 78436 | 1950 | 2,128.76 | | |
| | 1951 | 3,305.16 | | |
| | 1952 | 1,948.85 | | |
| | 1953 | 1,436.86 | | |
| | 1954 | 334.24 | | |
| | 1955 | 3,098.66 | | |

The only issue is whether the Commissioner erred in disallowing the amounts claimed as bad debt deductions by the law partnership of Pachella and Chary on the partnership returns for the taxable years 1950 to 1955, inclusive.

All the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

The petitioners and the law partnership of Pachella and Chary, hereinafter referred to as the law partnership, filed their respective income tax returns for the taxable years 1950 and 1951 with the collector of internal revenue for the fifth district of New Jersey and for the taxable years 1952 to 1955, inclusive, with the district director of internal revenue, Newark, New Jersey.

The petitioner Herbert A. Chary, hereinafter referred to as Chary, was admitted to the bar of the State of New Jersey in 1929. Dominick F. Pachella, hereinafter referred to as Pachella, was admitted to the bar of the State of New Jersey in 1928. Both Chary and Pachella, up to and including the years in controversy, did continuously engage in the practice of law in the State of New Jersey. On January 1, 1946, Chary and Pachella formed a law partnership in the city of Hackensack, Bergen County, New Jersey. The law partnership for the most part specialized in real estate mortgage placement and represented banks, mortgage lending institutions, and individuals.

On July 1, 1946, Chary and Pachella and Max Harrison organized Town and Country Cleaners, a New Jersey corporation, hereinafter

referred to as the corporation, to carry on a drycleaning business. As the initial capital of the corporation Chary and Pachella each paid in cash the amount of $3,000 and Harrison transferred to the corporation the leases, furniture, and fixtures of four drycleaning stores then owned by Harrison, subject to unpaid obligations thereon which were assumed by the corporation. The contribution of Harrison was recorded in the corporation's general journal and may be summarized as follows:

Assets _____$10,538.80
   Notes payable_____ $7,538.80
   Capital stock_____ 3,000.00

During the years 1946 and 1947 the corporation purchased equipment and machinery and leased a building in which it established a drycleaning plant and store. The corporation, in addition, operated the four stores acquired from Harrison as branch stores and opened a fifth branch store. During its first year of operation the corporation made or incurred capital expenditures totaling $65,884.51. The major portion of this amount was for machinery and equipment purchased on conditional sales agreements which were guaranteed by Chary, Pachella, and Harrison.

Chary and Pachella were wholly without experience in the drycleaning business and, consequently, Harrison was placed in full charge of the operation of the business of the corporation.

From the beginning the corporation operated at a loss. The following is a schedule of the net income (taxable income for 1954 Code years) or net operating losses (before net operating loss deductions) that the corporation reported for Federal income tax purposes during the following periods:

| *Fiscal year ended June 30—* | | *Fiscal year ended June 30—* | |
| --- | --- | --- | --- |
| 1947 | ($17,822.52) | 1953 | $413.27 |
| 1948 | ( 45,537.65) | 1954 | 2,473.85 |
| 1949 | ( 21,718.00) | 1955 | ( 3,531.35) |
| 1950 | ( 6,563.75) | 1956 | ( 13,454.76) |
| 1951 | ( 6,146.58) | | |

In order to enable the corporation to meets its operating expenses, the law partnership advanced approximately $40,000 to the corporation between 1946 and 1950. These funds were advanced weekly to meet payroll, rent, and other operating expenses. The sole record kept by the law partnership of such advances was their check stubs and canceled checks. These advances were not otherwise reflected on the books and records of the partnership. No notes were given nor was any date of repayment established for these advances. No interest was paid or accrued on the books of the corporation with respect to these advances. Harrison did not at any time advance moneys to the corporation.

In addition to the amounts advanced to the corporation by the law partnership during the years 1946 to 1950, in order to continue operating the business of the corporation, funds were borrowed from various clients, relatives, and friends of Chary and Pachella. The majority of these borrowings was from clients. Such indebtedness was evidenced by promissory notes signed by the corporation, Chary, Pachella, and Harrison. The notes provided that each of the aforementioned parties was jointly and severally liable. During the period between October 30, 1946, and July 8, 1951, 33 promissory notes totaling $101,949.50 were so issued. (Proceeds of the later notes were used to repay earlier obligations incurred.)

In 1948, in order to consolidate and better control the operation of the business and to reduce operating expenses, the corporation sold the five branch stores at a loss and thereafter operated solely at the plant.

In the latter part of 1949 the stockholders of the corporation determined that in order to salvage the business it would be in the best interest of the corporation for Ann Chary, wife of Chary, to enter into the active management of said business. As a consequence, Ann Chary was given nominal ownership of 1 share of Chary's stockholding, was elected president of said corporation, and devoted all of her time and effort thereafter to the operation of said business. In addition, Chary himself devoted approximately 40 percent of his time and considerable effort in the management and operation of the business of the corporation.

In 1950 Harrison surrendered his interest in the corporation to the corporation without any consideration and without return of any part of his capital investment and retired from the operation of the business.

During each of the years 1950, 1951, 1952, and 1953 Chary and Pachella, the sole stockholders of the corporation, were of the opinion that the corporation was insolvent in the commercial sense, and in each of said years they were of the opinion that $10,000 of the $40,000 which the law partnership had advanced to the corporation became worthless, and they deducted said amount as a bad debt on their partnership return for each of said years. On the books and records of the corporation the amount reflecting these advances was not correspondingly reduced. The petitioners have referred to these deductions as Item I Deductions.

At the same time the corporation was unable to repay the amounts borrowed from the clients, relatives, and friends of Chary and Pachella. The law partnership repaid these loans. In some instances the law partnership advanced funds to the corporation and the corporation satisfied the debt and in other instances the law partnership satisfied the debt directly. During the years 1950 to 1955, inclusive,

the law partnership made payments, either directly to the noteholders or via the corporation, totaling $13,866.52, $16,931.34, $6,500, $1,880, $2,950, and $17,809.22, respectively. The law partnership also deducted these amounts as bad debts on the partnership income tax returns for the respective years in which the payments were made, except that for the year 1950 only $10,800 was deducted. The petitioners have referred to these deductions as Item II Deductions.

The parties have stipulated that if Chary were called to testify he would testify, in part, that he and Pachella desired to preserve their reputation in the community and with the clients from whom the aforementioned sums were borrowed; and, further, that if the corporation went into bankruptcy it would adversely affect their law practice.

In December 1954 the law partnership was terminated in order to permit Pachella to accept an appointment by the Governor of the State of New Jersey to become a judge of the Bergen County Court. Pachella died on April 15, 1955.

During 1955 the corporation sold all of its assets and ceased operations. The proceeds of the sale were used to satisfy creditors of the corporation.

### Item I. Deductions.

The respondent contends that the advances by the law partnership to the corporation totaling approximately $40,000 were not bona fide loans but were contributions to capital. In the alternative, respondent contends that if such advances were bona fide loans they were nonbusiness loans. The petitioners' principal argument is that such loans were not only bona fide but were business loans inasmuch as the business of the corporation under the circumstances became their business.

There is considerable evidence tending to indicate that the advances were not genuine loans. To begin with, the law partnership kept no record of the amounts advanced other than that which appeared on check stubs and canceled checks, and no notes or other evidences of indebtedness were issued. In addition, no date of repayment was established for these advances and no interest was paid or accrued on the books of the corporation with respect to these advances. Such factors have been considered as strongly suggesting that the advances were intended as risk capital rather than loans. *R. E. Nelson*, 19 T.C. 575, 580 (1952); *Powers Photo Engraving Co.*, 17 T.C. 393, 400 (1951), remanded on another issue 197 F. 2d 704 (C.A. 2, 1952); *Lewis L. Culley*, 29 T.C. 1076, 1088 (1958).

However, we need not rest our decision on the conclusion that the advances represented contributions to capital rather than loans, for we are satisfied that they cannot qualify as business loans. It is well

settled that if the integrity of the corporate form remains intact the business of a corporation is not the business of its stockholders or officers, *Burnet* v. *Clark*, 287 U.S. 410 (1932), *Dalton* v. *Bowers*, 287 U.S. 404 (1932), and this is so notwithstanding the fact that the stockholders may have devoted most of their time to the business of the corporation. *Langdon L. Skarda*, 27 T.C. 137, 148 (1956), affd. 250 F. 2d 429 (C.A. 10, 1957); *Jan G. J. Boissevain*, 17 T.C. 325, 332 (1951); *H. Beale Rollins*, 32 T.C. 604, 615 (1959), affd. 276 F. 2d 368 (C.A. 4, 1960). As we stated in *Charles G. Berwind*, 20 T.C. 808, 815 (1953), affirmed per curiam 211 F. 2d 575 (C.A. 3, 1954), an officer or employee "cannot appropriate unto himself the business of the various corporations for which he works." Furthermore, even if we assume that Chary was in the trade or business of being an officer or employee of the corporation, the lending of money by a corporate employee to his corporate employer has been held not to be proximately related to such a trade or business. *Aubrey S. Nash*, 31 T.C. 569, 573 (1958); see also *W. A. Dallmeyer*, 14 T.C. 1282, 1290 (1950). Cf. *John M. Trent*, 34 T.C. 910 (1960), revd. 291 F. 2d 669 (C.A. 2, 1961). The petitioners have also failed to establish that the loss resulting from the worthlessness of loans made to a corporation engaged in the drycleaning business bore a proximate relationship to their law partnership. See and compare *Edward Koppelman*, 27 T.C. 382 (1956), appeal dismissed 249 F. 2d 442 (C.A. 6, 1957); *Dominick J. Salomone*, 27 T.C. 663 (1957); *Darwin O. Nichols*, 29 T.C. 1140 (1958).

Finally, in the petition filed in Docket No. 78435 it was alleged in paragraph 5(c) thereof that Pachella was—

engaged in the business of investing moneys for himself and other persons * * * in various other business ventures, including but not limited to Rogers Trailer Park, a corporation of New Jersey, and Nu Building Products, Inc., a corporation of New Jersey, and participated actively in the operation and development of said business ventures in an effort to protect said investments.

The respondent denied this allegation in his answer. While no direct evidence was submitted by petitioners to substantiate this allegation, the petitioners, in any event, have failed to show that the alleged activities of Pachella in promoting, organizing, managing, financing, and making loans to business enterprises were so extensive as to bring him within the authority of the "promoter cases." *Charles G. Berwind, supra; Dominick J. Salomone, supra.*

Accordingly, the respondent's determination that the advances totaling $40,000 resulted in nonbusiness bad debts is approved.

This holding is not completely dispositive of the issue, however, for while the law does not permit the deduction of a nonbusiness bad debt which is recoverable in part during the taxable year;[1] it does

---

[1] Sec. 23(k)(1), I.R.C. 1939; Regs. 111, sec. 29.23(k)–6.

permit the nonbusiness bad debt to be treated as a loss from the sale or exchange of a capital asset held for not more than 6 months if the nonbusiness debt becomes entirely worthless within a taxable year.[2]

Since there is no standard test or formula for determining worthlessness within a given taxable year, the determination must depend upon the particular facts and circumstances of the case. *W. A. Dallmeyer, supra* at 1291. Furthermore, the date of worthlessness is to be fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope of recovery. *W. A. Dallmeyer, supra; Bella Feinstein*, 24 T.C. 656, 658 (1955). In the instant case the record merely discloses that the corporation sustained net operating losses and that Pachella and Chary "were of the opinion that the corporation was insolvent in the commercial sense." No satisfactory evidence was submitted from which an independent judgment of assets and liabilities, or of ultimate collectibility, could be made. *Higginbotham-Bailey-Logan Co.*, 8 B.T.A. 566 (1927). In *Isadore Schuman*, 20 B.T.A. 1167, 1169 (1930), we stated that, "Facts not conclusions alone, must be presented to us, so that we can form an independent opinion of the question." Consequently, the petitioners have not sustained their burden of establishing that the loans to the corporation became valueless prior to 1955, the year in which the corporation ceased operations.

## *Item II. Deductions.*

On the law partnership's income tax returns for the years 1950 to 1955, inclusive, business bad debt deductions were claimed by Pachella and Chary for "monies paid as guarantor of corporate indebtedness of Town and Country Cleaners." The respondent disallowed these deductions on the theory that Pachella and Chary were merely accommodation makers on the notes and that the subsequent payment of the notes by the law partnership merely gave rise to nonbusiness debts which did not become totally worthless prior to 1955. The petitioners contend essentially that they were not accommodation makers on the notes but were primarily liable thereon; and, therefore, the payments made by the law partnership were, in the alternative, deductible either under section 23(e)(1),[3] section 23(e)(2),[4] section 23(a)(1)(A),[5] or section 23(a)(2) [6] of the Internal Revenue Code of 1939.

[2] Sec. 23(k)(4), I.R.C. 1939; Regs. 111, sec. 29.23(k)–6.
[3] Losses, by individual, incurred in a trade or business.
[4] Losses incurred in any transaction entered into for profit though not connected with a trade or business.
[5] Trade or business expenses.
[6] Nontrade or nonbusiness expenses paid or incurred for production or collection of income or for the management, conservation, or maintenance of property held for the production of income.

While it may be, as petitioners contend, that under the negotiable instruments laws of New Jersey they were in a technical sense primarily liable on the notes because they may have received value in some form for the notes, *Morris County Brick Co.* v. *Austin*, 79 N.J.L. 273, 75 Atl. 550 (1910), *Coast National Bank* v. *Bloom*, 113 N.J.L. 597, 174 Atl. 576 (1934), nevertheless, based upon the record before us and the inferences emanating therefrom, it is the opinion of this Court that as between the corporation and the law partnership it was intended the latter was to be liable only as a guarantor and not as a cooobligor. Thus, when the law partnership paid the notes as guarantor, it obtained a claim against the corporation. If the law partnership was unable subsequently to recover from the corporation, it quite naturally sustained a loss. However, such a loss has been held to be by its very nature a loss from the worthlessness of a debt deductible only under section 23(k). *Putnam* v. *Commissioner*, 352 U.S. 82, 85 (1956); *S. D. Ferguson*, 28 T.C. 432, affd. 253 F. 2d 403 (C.A. 4, 1958). Parenthetically, it is to be noted that the deduction is allowed not because of the payment but because the payment gives rise to a claim which if worthless constitutes a bad debt. Since we have held that section 23(k) is controlling, there is no merit in petitioners' alternative contentions that the losses are deductible either under section 23(e)(1), section 23(e)(2), section 23(a)(1)(A), or section 23(a)(2). These sections, together with section 23(k), are all mutually exclusive. *Spring City Co.* v. *Commissioner*, 292 U.S. 182 (1934).

Once having determined that section 23(k) is applicable, the question arises as to whether the bad debt was a business bad debt or a nonbusiness bad debt. To escape classification as a nonbusiness bad debt as defined by section 23(k)(4), a debt and the loss from its worthlessness must bear a proximate relation to a business in which the taxpayer is engaged at the time the debt becomes worthless. *Estate of Theodore Gutman*, 18 T.C. 112 (1952); Regs. 111, sec. 29.23(k)–6.

Earlier in this opinion we indicated that the evidence adduced by the petitioners was not sufficient to sustain petitioners' alternative contentions (1) that the business of the corporation became their business, (2) that the lending of money by a corporate employee to his corporate employer was under the circumstances proximately related to the former's trade or business, or (3) that petitioners' promotional activities were so extensive as to place them in the business of promoting business enterprises. What we have said in connection with the loans made by Pachella and Chary to the corporation (Item I Deductions) applies equally to the transactions whereby Pachella and Chary became guarantors of the corporation's notes

(Item II Deductions). Furthermore, we are unable to conclude from the record that the petitioners Pachella and Chary were in the business of guaranteeing loans or that the guaranteeing of the corporation's notes bore a proximate relation to petitioners' law practice, either at the time the guarantees were given or at the time the claims against the corporation became worthless. *Robert H. Mc-Neill*, 27 T.C. 899 (1957), affirmed on this issue 251 F. 2d 863 (C.A. 4, 1958), certiorari denied 358 U.S. 825 (1958); *Putnam v. Commissioner*, 224 F. 2d 947 (1955), affd. 352 U.S. 82 (1956). We therefore agree with respondent's contention that the debts in question are deductible only as nonbusiness bad debts under section 23(k)(4) of the 1939 Code. Such debts did not become worthless until 1955.[7]

In Docket No. 78435 the respondent has conceded the addition to tax under section 294(d)(2) of the 1939 Code. Since the petitioners have offered no evidence as to why the addition to tax under section 294(d)(1)(A) of the 1939 Code should not be imposed, the petitioners are held liable therefor.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

[7] The year of worthlessness was previously determined in connection with the deductibility of the Item I Deductions and the reasons given there are of equal applicability to the Item II Deductions.