ESTATE OF MAXWELL J. ESTROFF, Deceased, NAOMI ESTROFF and DALE TOPOREK, Executrixes, and NAOMI ESTROFF, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Estroff v. Commissioner
Docket No. 17880-80
United States Tax Court
T.C. Memo 1983-666; 1983 Tax Ct. Memo LEXIS 120; 47 T.C.M. (CCH) 234; T.C.M. (RIA) 83666; November 3, 1983. *120 Maxwell Estroff owned 7,486 shares of stock of First Railroad and Banking Co. of Georgia, and his wife, Naomi, owned 14,073 shares. Maxwell entered into an agreement with his friend and longtime business associate, Fink, to sell the 21,559 shares to fink at market price and Fink agreed to sell the shares back to Estroff at the same price in not less than 30 days. Estroff loaned Fink $135,000, without interest, to buy the stock. 34 days later Fink sold the 21,559 shares to Estroff for the same price he paid for them and used the proceeds to repay the loan to Estroff. The Estroffs had a large loss on the sale of their stock to Fink which they used on their 1974 tax return to offset a large gain Estroff had realized in 1974 on the sale of a business. Held: The Estroffs entered into a contract or option to acquire substantially identical stock within 30 days of the sale and sec. 1091(a), I.R.C. 1954, disallows deduction of the loss on the sale of the stock. Held, Further and Alternatively: If Naomi was not a party to the contract or option to reacquire her stock, the transaction constituted an indirect sale from Naomi, through Fink, to Maxwell, a related person, and sec. 267(a), I.R.C. 1954, *121 disallows deduction of the loss on the sale of Naomi's stock. William J. Cooney, for the petitioners. Julien A. Fortuna, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined deficiencies in and additions to the Federal income taxes of Maxwell J. and Naomi Estroff for the taxable years 1974 and 1975 as follows: Addition to tax [1]
Year
Deficiency
sec. 6653(a)
1974
$62,568.06
$3,128.40
1975
13,030.35
651.52 After concessions, [2] the sole issue is whether Maxwell J. Estroff and petitioner Naomi Estroff are entitled to deduct a capital loss resulting from their sale of First Railroad and Banking Co. of Georgia common stock to a personal friend who resold it to them 34 days later. The facts have been fully stipulated pursuant to Rule 122. [3] *122 The stipulation of facts and the amendment thereto, along with the attached exhibits are incorporated herein by reference. Petitioner Naomi Estroff (petitioner) and Dale Toporek (Toporek) are executrixes of the estate of Maxwell J. Estroff (Estroff), deceased. Petitioner and Toporek both legally resided in Augusta, Ga., on the date the petition was filed herin. Estroff and petitioner were married and filed joint Federal income tax returns for the taxable years 1974 and 1975 with the Internal Revenue Service Center, Chamblee, Ga.
In 1974, Estroff and his close personal friend and business associate, Jack E. Fink (Fink), jointly owned various corporations which manufactured and sold clothing for the Army-Air Force exchange system and for the general public. Prior to September 1974, Estroff and Fink disposed of their interests in three of their jointly owned corporations. Estroff reported $216,161 of long-term capital gain from the sale on his 1974 joint Federal income tax return. Prior to September, 1974, Estroff, petitioner, and Fink had acquired common stock of the First Railroad and Banking Company of Georgia, (First Railroad). At that time, Estroff, petitioner, and Fink owned 13,601, 14,073, and 23,504 shares of First Railroad common stock, respectively. *123 In late Sept., 1974, a meeting was held between, Estroff and A.J. Kilpatrick (Kilpatrick) of the firm, A.J. Kilpatrick & Co., Investment Securities, (Investment Securities). At the meeting, Kilpatrick suggested that Estroff sell his First Railroad stock to Fink with the understanding that he would later repurchase it. Kilpatrick believed the transaction would create tax losses which could be used by Estroff and Fink to offset the substantial capital gains they had realized earlier in the year. Sometime after the meeting, Estroff and Fink orally agreed that Estroff would sell 21,559 shares of First Railroad to Fink using Investment Securities as the broker. Estroff agreed to loan Fink the money to purchase the stock, and Fink agreed to sell the stock back to Estroff after a minimum of 30 days and to use the proceeds from that sale to repay the loan. The sale price for both sales was to be market price. On Oct. 1, 1974, Estroff sold 7,486 shares of his First Railroad stock over the counter to Fink. On the same date, petitioner sold her 14,073 shares of First Railroad stock over the counter to Fink. The stock was sold through Investment Securities at its market price on that date *124 of $6.25 per share for a total of $134,743.75, less a $750 broker's commission paid to Investment Securities. Petitioner and Estroff had a combined cost basis in the 21,559 shares of $323,943.69 on the date of sale. Estroff loaned Fink $135,000 by check dated Oct. 8, 1974, which Fink used to purchase the 21,559 shares of First Railroad stock. No interest was charged by Estroff and Fink did not put up any collateral for the loan. [4] The shares purchased by Fink were registered in his name and a credit entry in the amount of $133,993.75 was made in the Investment Securities ledger card in the name of Estroff to reflect the sale of 21,559 shares of First Railroad stock. Fink held the 21,559 shares of stock for approximately 34 days. During that time, Fink received a dividend of $2,100 on the stock, which he retained. On November 4, 1974, Fink sold the 21,559 shares through Investment Securities back to Estroff for $6.25 per share. The stock was sold to Estroff at this price, even though the low bid was 6-3/4 and the high ask was 7-1/2 on the date of the sale. Estroff paid a *125 total of $134,743.75 for the shares, of which $133,933.75 was paid over to Fink, and $750 of which was paid to Investment Securities as a broker's commission. [5] Fink, Immediately after receiving the sale proceeds from the 21,55. shares of First Railroad stock, repaid the $135,000 he had borrowed from Estroff. [6] Estroff and petitioner claimed a loss on the sale of the First Railroad stock in the amount of $189,949.94 on their 1974 Federal income tax return. [7] Respondent disallowed the loss in its entirety. The sole issue is whether Estroff and petitioner *126 are entitled to a loss deduction on the sale of their First Railroad stock. Respondent contends that the sale of the 21,559 shares of First Railroad stock to Fink was a sham and lacked economic substance; also that the sale was a "wash sale" within the purview of section 1091(a). Alternatively, respondent contends that the sale of the 14,073 shares of First Railroad stock by petitioner and the purchase of those same shares by Estroff was an indirect sale from petitioner to Estroff, resulting in the disallowance of any loss therefrom under section 267(a)(1). We agree with respondent on all three grounds but will rest our conclusion primarily on the latter two. Briefly, with regard to the first ground, the stipulated facts clearly indicate that the Estroffs' only purpose in entering into this transaction with Fink was to obtain a capital loss that could be offset against Estroff's capital gain from the sale of his business. The terms of the agreement were such that it was very unlikely that the Estroffs would realize a profit or a loss on the transaction. After reacquiring the stock from Fink they were in the same economic position they were in prior to the sale, with regard to *127 both the stock and the cash loan. The retention by Fink of the dividend paid on the stcok while it was in his name was probably just icing on the cake to make the transaction look real. [8] *128 While there is no evidence to prove it, we believe the circumstances warrant the assumption that Estroff was acting as agent for his wife when he dealt with her stock. The courts will not allow a taxpayer to deduct a loss from a transaction that "did not appreciably affect his beneficial interest except to reduce his tax * * *." Knetsch v. United States,364 U.S. 361, 366 (1960). See also Gregory v. Helvering,293 U.S. 465 (1935); Higgins v. Smith,308 U.S. 473 (1940); Goldstein v. Commissioner,364 F.2d 734 (2nd Cir. 1966) affg. 44 T.C. 284 (1965). Turning now to respondent's second ground, we agree with respondent that Estroff was acting for both himself and his wife when he entered into the agreement with Fink to sell Fink 21,559 shares of First Railroad stock and to repurchase those shares from Fink not less than 30 days leter. The record does not disclose what arrangements Estroff had with petitioner, but Estroff did not own 21,559 shares in his own name so petitioner had to be a party to the transaction.Neither does the record disclose whether the 14,073 shares owned by petitioner were reregistered in her name after Estroff repurchased them. Absent any evidence to the contrary we assume petitioner's stock was reregistered in her name after it had served their purposes. Since petitioner and Estroff filed a joint return for 1974, the return sheds no light on the subject. But if petitioner actually sold her shares to Fink and then Estroff bought the same shares from Fink, respondent's third ground would come into play.
Section 165(c)(2) in conjunction *129 with section 165(a) allows a deduction for losses incurred in any transaction entered into for profit, though not connected with a trade or business. [9] However, section 1091(a) prohibits the deduction of a loss on the sale of stock if substantially identical stock is acquired or if the taxpayer enters into a contract or option to acquire substantially identical stock within 30 days prior to or 30 days subsequent to the sale. [10]
On the assumption *130 that Estroff was acting as agent for his wife, see J.B. Atkins, Adm. v. Commissioner,28 B.T.A. 500, 506 (1938), affd. 76 F.2d 387 (5th Cir. 1935), Estroff sold 21,559 shares of First Railroad stock to Fink on October 1, 1974. Sometime between late September and the date of the sale, Estroff and Fink agreed that Fink would sell the stock back to Estroff after a minimum of 30 days. Thus, within 30 days of the time of the sale to Fink, Estroff estered into a contract to acquire substantially identical stock to that which he had sold. Accordingly, section 1091(a) by its express terms prohibits the deduction of the loss realized by Estroff on the sale of his stock to Fink. [11]
However, petitioner maintains that under State law oral understandings or agreements to purchase stock or securities are undenforceable and, accordingly, the wash-sale rules were not triggered. We disagree. Section 1091(a) requires only that the taxpayer have a contract to purchase substantially identical securities. Although under Ga. Ann. Code, section 11-8-319(a) (1982), [12] *132 the contract *131 may not have been enforceable at the time it was first entered into, the parties still had a contract. This is not a case where the contract was void ab initio, and furthermore, under Ga. Ann. Code, section 11-8-319(b) (1982), [13] to the extent delivery of the stock was accepted, or payment had been made, the contract was enforceable. Section 1091(a) requires only that the taxpayer have a contract to purchase substantially identical securities. Therefore, we hold that section 1091(a) prohibits the loss deduction on the sale of the 21,559 shares of First Railroad stock by Estroff to Fink. If it were concluded that Estroff was not acting as petitioner's agent in dealing with her stock, as petitioners contend, so that section 1091(a) does not apply to petitioner, the above reasoning prohibits the loss deduction on the sale of Estroff's 7,486 shares of the stock to Fink. We would then look to respondent's third ground for denying the loss deduction on petitioner's stock. As to petitioner's 14,073 shares of First Railroad stock sold to Fink, respondent alternatively contends that the loss incurred is disallowed since it was really an indirect sale of the stock by petitioner, through Fink, to her husband Estroff and that section 267 precludes deduction of the loss. Petitioner contends that there was a complete break in petitioner's and Estroff's ownership of the First Railroad stock and that section 267 is therefore inapplicable. We disagree and hold for respondent.
Section 267(a) provides that no deduction is allowed in respect of losses from sales or exchanges of property, directly or indirectly, between certain related persons. Section 267(b)(1) *133 provides that the disallowance under section 267(a) applies to members of a family which is defined in 267(c)(4) to include the spouse of an individual. Thus, if the sale of petitioner's stock to Fink can be considered an indirect sale of the stock from petitioner to her husband, section 267 will preclude the loss deduction. The purpose of section 267 was to put an end to the right of taxpayers to choose, by intra-family transfers and other designated devices, their own time for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted. McWilliams v. Commissioner,331 U.S. 694, 700 (1947), Hassen v. Commissioner,63 T.C. 175, 185 (1974), affd. 599 F.2d 305 (9th Cir. 1979). If there is a shift of property between those economically related persons designated under section 267(b), then, regardless of the motive for and manner in which the intragroup transfer is accomplished, the resulting loss is disallowed under section 267(a)(1) unless there occurs a definite break in the continuity of the related group's economic interest in the transferred property so that the seller undoubtedly realizes a genuine substantive economic loss. Hassen,supra, at 184. *134 In determining whether there is a genuine economic loss, the intent of the parties, the time element, the ultimate result, and the mutual interdependence of the steps taken as well as the selling price, the fair market value, and the near-identity of terms of the sale and purchase are among the factors to be considered. Hassen,supra, at 190. Applying the factors articulated in Hassen,supra, we conclude that there was not a definite break in petitioner's and Estroff's ownership of the First Railroad stock. First, the intent of Estroff, petitioner, and Fink was that economic ownership of the property be retained by the Estroffs. The parties guaranteed this would be the case by entering into a contract requiring Fink to resell the property to Estroff after a minimum of 30 days.Second, at the time petitioner sold her stock to Fink, the agreement between Estroff and Fink requiring repurchase of the stock had already been entered into. Therefore, there was no lapse of time between petitioner's sale of the stock and Estroff's right to repurchase it. Although Estroff agreed to wait a minimum of 30 days before repurchasing the stock, this was insignificant in that Estroff was allowed *135 to repurchase the stock at the same price as petitioners had sold it to Fink. [14] Third, the ultimate result of the series of transactions was that the related group, Estroff and petitioner, retained ownership of the First Railroad stock. Fourth, the sale by petitioners to Fink and the subsequent repurchase by Estroff were clearly mutually dependent. Estroff loaned the money to Fink interest free to make the purchase of the stock and Fink used the proceeds from Estroff's subsequent repurchase of the stock to repay the loan proceeds. Finally, although petitioner sold her stock to Fink at its fair market value, Estroff repurchased the stock for the same price as petitioner had sold the stock to Fink, even though the stock had subsequently appreciated in value. This identity of terms in the sale and purchase price buttresses our conclusion that there was not a definite break *136 in the continuity of ownership. Had Fink really been the true owner, he would have retained any appreciation in the stock that occurred during his ownership. Petitioners argue that Fink's retention of the $2,100 dividend paid on the First Railroad stock shows that there was a definite break in petitioner's and Estroff's ownership of the stock.Although this factor does support petitioners, we do not believe that this alone establishes the necessary break in petitioner's and Estroff's stock ownership. See footnote 8 on page 9. We conclude that if petitioner's sale of her 14,073 shares of stock to Fink is treated as a separate transaction between petitioner and Fink and that petitioner had no contract or option to acquire substantially identical stock so that section 1091(a) does not preclude allowance of her loss on the transaction, nevertheless the sale and Estroff's agreement with Fink to repurchase petitioner's stock was an indirect sale by petitioner to Estroff and section 267(a) precludes the deduction of that loss as a sale between related individuals. Because of the concessions Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years in issue.↩
2. Respondent now concedes that petitioners are not liable for the additions to tax pursuant to section 6653(a) for 1974 and 1975.↩
3. All rule references are to the Tax Court Rules of Practice and Procedure.
4. It was common practice for Estroff and Fink to loan one another money interest free and without collateral.↩
5. The only expense incurred by Estroff and petitioner in connection with the sale and repurchase of the 21,559 shares of First Railorad stock was the $750 broker's commission paid to Investment Securities. This was also the only expense Fink incurred in the transaction. ↩
6. Fink also sold his First Railroad stock to Estroff and later repurchased it after a minimum of 30 days, and claimed a capital loss on the transaction. Respondent disallowed the loss and subsequently Fink and respondent entered into a settlement regarding this issue.↩
7. The loss was computed as follows: ↩
Gross sales price
$133,993.75 Less: Cost basis
323,943.69 (189,949.94)
8. We note that the stock dividend of $2,100 was relatively low in amount when compared to the $189,949.94 capital loss claimed by Estroff and petitioner. Furthermore, Fink sold his own stock in First Railroad to Estroff and later repurchased it from Estroff. The record does not indicate whether Estroff retained a dividend payable on Fink's stock although Estroff's tax return reports dividends received from "1st RR" in the amount of $3,711.54. To the extent, if any, that Estroff retained such dividends, this would offset the $2,100 that Fink retained, lessening even more the importance of Fink's retention of the $2,100.
9. Respondent does not claim that this was not a transaction entered into for profit. ↩
10. Specifically, sec. 1091(a) provides in pertinent part as follows: DISALLOWANCE OF LOSS DEDUCTION -- In the case of any loss claimed to have been sustained from any sale or other disposition of shares of stock or securities where it appears that, within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date, the taxpayer has acquired (by purchase or by an exchange on which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction for the loss shall be allowed under section 165(c)(2)↩ * * *.
11. See also Stein v. Commissioner,T.C.Memo. 1977-241↩ wherein a loss was disallowed under almost identical circumstances.
12. Ga. Code Ann., sec. 11-8-319(a)(1982), provides that: A contract for the sale of securities is not enforceable by way of action or defense unless: (a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity or described securities at a defined or stated price * * *. 13. Ga. Code Ann., supra, also provides that: A contract for the sale of securities is not enforceable by way of action or defense unless: * * * (b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment * * *.↩
14. Petitioner contends that Estroff purchased the stock back from Fink at its fair market value. However, the low bid on the date Estroff repurchased the stock was 6 3/4, and Estroff only paid Fink 6 1/4 per share. Therefore, we reject petitioner's claim that Estroff paid Fink the fair market value of the stock.↩